GEORGE W. CARPENTER, Plaintiff-Appellee, v. MOBILE WORLD, INC., *et al.*, Defendants-Appellants.

Fourth District   No. 4—89—0589

Opinion filed February 22, 1990.

Brian T. Otwell, of Morse, Giganti & Appleton, of Springfield, for appellants.

Patrick J. O'Hara, of Blane & O'Hara, of Petersburg, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On June 21, 1988, plaintiff George W. Carpenter brought a five-count complaint in the circuit court of Menard County against defendants Mobile World, Inc. (Mobile), and Rich Hayes. Count I was against Mobile, seeking to rescind for breach of a contract whereby plaintiff bought a mobile home from Mobile. Counts II and III sought compensatory damages from Mobile for breach of implied warranties of the contract. Counts IV and V were against Hayes, who was alleged to be an agent of Mobile. Count IV alleged Hayes knowingly participated in a transaction whereby a defective mobile home was sold to plaintiff and, because of Hayes' failure to follow proper procedures in regard to Federal requirements concerning name plates on mobile homes, plaintiff was delayed in learning of the defects in the mobile home he purchased from Mobile. Compensatory damages were sought. Count V alleged Hayes engaged in the previously described conduct wilfully and fraudulently and requested both compensatory and punitive damages.

On May 5, 1989, following a jury trial in the circuit court of Menard County, the court entered an order reflecting the jury's findings in favor of plaintiff on all five counts. On count I, the jury found the contract was breached and awarded rescission in the full contract price of $20,146. On count II, the jury found Mobile had breached the implied warranty of merchantability and assessed damages in the amount of $3,500. On count III the jury found Mobile had breached the implied warranty of fitness for a particular purpose and assessed damages in the amount of $30,000. On count IV the jury assessed damages in the amount of $100. On count V the jury assessed zero actual damages and $20,000 punitive damages.

On July 6, 1989, following defendants' post-trial motion, the court ordered remittitur of damages in count II from $3,500 to $1,500, and vacated the award of damages as to count III entirely as a double recovery. The court denied defendants' post-trial motion in all other respects and entered judgments on all five counts. Defendants have appealed.

Defendants make numerous claims of error on appeal. As we conclude some of these contentions are sufficient to require reversal of the judgments on each of the counts, we need not consider all such

claims. The contentions of defendants which we consider are: (1) the court erred in denying defendants' motion for change of venue from Menard County; (2) the evidence did not support recovery on count I; (3) counts I, II, and III are barred by statutory limitation provisions; (4) implied warranties claimed to have been breached in counts I, II, and III were validly disclaimed by Mobile; (5) count IV fails to state a cause of action; and (6) the award of punitive damages as to count V cannot stand, because no compensatory damages were awarded for the same conduct.

■ Menard County was a proper venue for the case. Section 2—101 of the Code of Civil Procedure states that every action must be commenced "in the county of residence of any defendant [who is properly joined] *** or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." (Ill. Rev. Stat. 1987, ch. 110, par. 2—101.) Here, the contract of sale of the mobile home required the "home will be delivered, blocked, leveled, anchored [and] skirted" in Petersburg, which is in Menard County. Thus, "some part" of the transaction "out of which the cause of action arose" occurred in Menard County.

The most important part of this case concerns the questions of whether the proof supported the judgment of rescission as to count I and whether any cause of action otherwise proved was barred by the limitation provisions of section 2—725 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 2—725). Consideration of this question requires a summary of the evidence at trial.

Taken most favorably to plaintiff, who prevailed at trial, the evidence showed the following series of events. On or about March 2, 1984, plaintiff entered into a contract to purchase the mobile home from Mobile for a price of $20,146. The contract made no express warranties. The mobile home was manufactured in Goshen, Indiana, and transported to Petersburg. Mobile admits the vehicle received some damage in transport but maintains it was superficial, involving damage to siding which was repaired by a factory representative. However, Steven Brady, a self-employed general contractor, testified he inspected the mobile home on October 6, 1987, and discovered a sagging roof and water damage. He concluded repairs would cost more than the value of the mobile home. He deemed the damage was such it could not have resulted from an episode where the siding was merely deeply scratched in transit. Brady's testimony was subject to some discount because of limited experience, but he was shown to have some expertise, and the trier of fact could properly have been persuaded by that testimony. No evidence was introduced to indicate

the faulty construction found to exist by Brady had been caused by anything occurring after the mobile home had been delivered.

■ Count I alleged the mobile home was "unfit for the purpose for which it was intended." Section 2—314(1) of the Code creates an implied warranty resulting from a sale of goods that the goods are "merchantable." (Ill. Rev. Stat. 1983, ch. 26, par. 2—314(1).) Section 2—314(2)(c) provides that for goods to be merchantable, they must be "fit for the ordinary purposes for which such goods are used." (Ill. Rev. Stat. 1983, ch. 26, par. 2—314(2)(c).) We deem the allegations of count I sufficient to allege a breach of the implied warranty of merchantability, even though the words "purpose for which it was intended" were used, rather than the statutory words "ordinary purposes for which such goods are used." Based upon Brady's testimony, the trier of fact could have found the existence of a breach of the implied warranty of merchantability as to the mobile home unless affirmative matter precluded such a finding. Under Brady's testimony that the cost of repairs was greater than the value of the mobile home, the trier of fact could have found the breach justified a rescission of the contract.

One type of affirmative matter which would preclude the implication of a warranty of merchantability would be an express provision of the contract meeting the requirements of section 2—316 of the Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—316) excluding such an implied warranty. As we will subsequently explain, the sales contract did contain such a provision, but Mobile pleaded it only in answer to counts II and III, but not as to count I. The other affirmative matter which might defeat count I is the properly pleaded affirmative defense that the action was not brought within the limits set forth in sections 2—725(1) and (2) of the Code, which state:

"(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Ill. Rev. Stat. 1987, ch. 26, pars. 2—725(1), (2).

■ The instant contract of sale was entered into on or about March 2, 1984, and the mobile home was delivered to plaintiff before June 1984. The complaint was not filed until June 21, 1988, more than four years after either of the foregoing events. No warranty of the contract extended to future performance. Accordingly, sections 2—725(1) and (2) of the Code were a bar to recovery as to count I, unless conduct on the part of Mobile tolled the running of that statute of limitations. Plaintiff contends such conduct arose under circumstances of this case when, (1) after complaints were made to Hayes, he sent a letter to plaintiff concerning what he would do in regard to "condensation problems" plaintiff and his wife were experiencing; and (2) testimony of Tina Carpenter, plaintiff's wife, that in late 1987 or early 1988, Hayes inspected the mobile home and offered to correct or repair several "problems" shown to him at the time and to return when the weather got warmer to look at the roof. Tina Carpenter further testified Hayes made no promises to repair the roof. The letter stated:

> "Items Mobile World will do to try to correct condensation problem: (1) install four roof louvers (two front and two rear); (2) remove shingles above living room stain and replace any bad plywood; (3) inspect entire roof for any damage or faulty construction; (4) install batten strip to seal siding joints; (5) repair ceiling around furnace flue; (6) repair floor around the washer area; (7) install new front door."

The circuit court found the running of the statutory period had been tolled. In support of that decision, plaintiff cites *Axia, Inc. v. I.C. Harbour Construction Co.* (1986), 150 Ill. App. 3d 645, 501 N.E.2d 1339. There, suit was brought for breach of a contract to construct an office building. Shortly after completion, the building allegedly began to leak, and the contractor attempted to correct the leakage problem over a period of several years during which time a statutory period of limitation for bringing such an action expired. The appellate court concluded that contractor was not merely engaging in negotiations or investigation of the problems but was taking affirmative action to eliminate the problems in an apparent recognition of the contractor's responsibility in creating the problems.

Defendant relies on *Nelligan v. Tom Chaney Motors, Inc.* (1985), 133 Ill. App. 3d 798, 479 N.E.2d 439, and *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 377 N.E.2d 224. In *Nelligan*, that plaintiff appealed a judgment dismissing a complaint charging an automobile dealer with a breach of warranty in regard to the sale of an automobile. The dismissal was based upon the expiration of the time limits of

section 2—725 of the Code. That plaintiff contended the running of the statutory period had been tolled, because various recalls of the vehicle resulted in repairs of the vehicle by that dealer on matters not connected with the alleged breach giving rise to the suit. The appellate court held no tolling had occurred. Similarly, in *Tomes*, the appellate court held that attempts to repair a particular defect in a boat by the seller did not toll the running of the statutory period of limitation in regard to suit for breach of warranty arising from another defect.

Here, the evidence shows the plaintiff and his wife had been arguing to Hayes that a water leakage problem arose from a defective roof as described by the contractor, Brady. Hayes maintained the water problem arose from condensation. The previously described letter apparently arose largely in response to these complaints. Tina Carpenter testified that after receiving the letter, neither she nor defendant believed that the work Hayes agreed in the letter to do would correct the problem with the roof. The circuit court concluded that the letter from Hayes, where he promised to make certain repairs and installations and examine the roof, in addition to his oral promise to inspect the roof, implied a promise to make any necessary corrections to the roof. While we give deference to the findings of the trier of fact, we hold that any such inference must fail as a matter of law.

Here, unlike in *Axia*, the agent of the seller, Hayes, did not promise to repair, replace, or correct the defect about which plaintiff now sues in seeking rescission. We conclude, as a matter of law, that the limitation period of section 2—725 had run when this suit was filed and had not been tolled as to count I. The judgment on count I in favor of plaintiff cannot stand.

Mobile maintains the implied warranties of merchantability which plaintiff contends in counts II and III to have been breached were disclaimed by a paragraph in enlarged print on the back of the contract which stated:

> "(9) Exclusion of warranties. I understand that the implied warranties on merchantability and fitness for a particular purpose and all other warranties express or implied are excluded by you from this transaction and shall not apply to the goods sold. I understand that you make no warranties whatsoever regarding the unit or any appliances or component contained therein, except as may be required under applicable State law."

■ Section 2—314 of the Code (Ill. Rev. Stat. 1983, ch. 26, par. 2—314) indicates that for implied warranties of merchantability to be disclaimed by the seller, compliance must be obtained with section 2—316 of the Code. (Ill. Rev. Stat. 1983, ch. 26, par. 2—316.) Section 2—

316(2) of the Code requires that ordinarily to exclude such an implied warranty, "the language must mention merchantability," and be in writing and be "conspicuous." (Ill. Rev. Stat. 1983, ch. 26, par. 2—316(2).) Here, the back page of the contract does contain a disclaimer which is in writing and does mention "merchantability." Plaintiff maintains it was not "conspicuous" and the circuit court agreed.

The parties agree the question of whether a purported disclaimer is conspicuous is a question of law for the court. (*Bowers Manufacturing Co. v. Chicago Machine Tool Co.* (1983), 117 Ill. App. 3d 226, 232, 453 N.E.2d 61, 67; Ill. Rev. Stat. 1983, ch. 26, par. 1—201(10).) "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it," and "in the body of a form [language] is 'conspicuous' if it is in larger *** type." (Ill. Rev. Stat. 1983, ch. 26, par. 1—201(10).) However, in *Anderson v. Farmers Hybrid Cos.* (1980), 87 Ill. App. 3d 493, 408 N.E.2d 1194, a purported disclaimer on the back of an order confirmation slip for the sale of unbred female pigs used for breeding purposes (gilts) contained a disclaimer on its back in print larger than the rest of the print on the back but in smaller print than that on the front of the slip. In small print on the front of the slip, a statement indicated the order was subject to conditions on the back of the slip. Also noting that the nature of the slip was such that a person might think nothing was on the back of the slip, the appellate court held the purported disclaimer of merchantability was invalid.

Plaintiff points out that here, as in *Anderson*, the disclaimer was on the back, and here, as in *Anderson*, no statement on the front of the document stated a disclaimer was made on the back of the document. Plaintiff maintains the precedent of *Anderson* requires us to determine the disclaimer here was not conspicuous. However, here the document of sale does not appear to lack writing on its back, and above the line on the front for signature by the buyer, in enlarged print, as large as any on the front, is a statement that buyer has read the back of the agreement. In *Bowers*, the warranty provisions of a warranty card were on the back of the card as was a disclaimer. The front of the card contained a statement that warranty provisions were on the back of the card. The disclaimer was held to be conspicuous. The court noted a reasonable person would likely have read the back. Here, too, a reasonable buyer would have seen the certificate indicating he had read the back of the document and, at least looked at the back. If such a person had looked at the back he would have seen the disclaimer, which was in bold face. We hold the implied warranties of merchantability upon which plaintiff brought counts II and III had

been disclaimed by Mobile. The judgment on those counts must be reversed.

■■ We note that in contesting the propriety of the judgment on counts I, II, and III, Mobile frames its contention on the theory the circuit court erred in denying motions by Mobile for summary judgment on those counts. Where, as here, the issue contained in a denied motion for summary judgment is then decided at trial, the ruling denying the summary judgment merges in the judgment entered after trial, and error in the denial cannot be raised on appeal from that judgment. (*Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 474 N.E.2d 744.) Plaintiff has not raised this issue but has treated the contentions of Mobile as contending the pleadings and evidence at trial required judgment to Mobile at the conclusion of the trial. We have ruled on Mobile's claims of error as to those counts in the same frame as has plaintiff.

■ Count IV was directed against Hayes. It alleged he violated various Federal regulations requiring the placement of a data plate on the mobile home and failed to comply with State law in delivering the mobile home to plaintiff with a required manufacturer's certificate of origin. Plaintiff alleges that had those requirements been complied with, he would earlier have learned of the claimed defect in the mobile home roof. Plaintiff has not shown any authority which indicates a cause of action arises from the violation of those regulations and laws. If the count purports to charge fraud, it lacks the specificity, particularity, and certainty required to do so. (*Trautman v. Knights of Columbus* (1984), 121 Ill. App. 3d 911, 460 N.E.2d 350.) Hayes maintains the trial court erred in denying his motion to dismiss the count. We agree. The judgment on that count must be reversed.

■ On count V, the court entered a judgment on a jury verdict awarding plaintiff no compensatory damages and $20,000 punitive damages. Punitive damages cannot be awarded when no compensatory damages, even in a nominal amount, have been awarded. *McGrew v. Heinold Commodities, Inc.* (1986), 147 Ill. App. 3d 104, 497 N.E.2d 424.

As we have indicated, we reverse the judgment entered as to each of the counts.

Reversed.

LUND and SPITZ, JJ., concur.