LARS NILSSON *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. NBD BANK OF ILLINOIS, n/k/a First Chicago NBD Corporation, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (2nd Division)   No. 1—98—4511

Opinion filed December 14, 1999.—Rehearing denied June 26, 2000.

Kiesler & Berman, of Chicago (Robert L. Kiesler and John J. Piegore, of counsel), and Tomczak & Haney, of Joliet (Jeffrey J. Tomczak, of counsel), for appellants.

Steven P. Handler, Steven H. Hoeft, Douglas G. Edelschick, and Ilan B. Feuchtwang, all of McDermott, Will & Emery, of Chicago, for appellees.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

Plaintiffs, Lars Nilsson and Halstead Properties I Limited Partnership (Halstead Properties), appeal from a judgment of the circuit court of Cook County awarding Nilsson $15,000 in damages as a result of a breach of contract by defendant NBD Bank of Illinois and three of its employees, Lisa Callahan, William McKinley, and William Lynch. All counts brought by or on behalf of Halstead Properties were dismissed by the circuit court prior to trial. Thus, on appeal, Nilsson contends that the lower court erred: (1) in denying his motion for a new trial on damages only as to count II of his complaint or, in the alternative, a new trial on all issues as to both breach of contract counts; (2) in directing a verdict in favor of defendants on Nilsson's common law fraud claim; (3) in finding that defendants did not violate the Consumer Fraud and Deceptive Business Practices Act (815 ILCS

505/1 *et seq.* (West 1996)); and (4) in dismissing Nilsson's contention that defendants violated the Illinois Fairness in Lending Act (815 ILCS 120/1 *et seq.* (West 1996)). Defendants cross-appeal, claiming that the promissory note, signed by Nilsson to secure the loan from which the breach of contract suit arose, was a demand note as a matter of law.

For the reasons articulated below, we affirm.

## BACKGROUND

The following represents information relevant to the determination of the case at bar. Beginning in December 1987, Nilsson and his partners obtained several loans from NBD Bank of Chicago (NBD Chicago) using their commercial properties as collateral. In June 1989, due to his previously established banking relationship with NBD Chicago, Nilsson wrote a letter to the bank to request a $500,000 five-year personal line of credit that would allow him to borrow, repay, and borrow again up to the maximum amount of the line. As collateral for the line of credit, Nilsson offered an assignment of the beneficial interest in a land trust for commercial property located at 1215 S. Washington, Wilmette, Illinois, as well as an assignment of the beneficial interest in the land trust that owned his own residence. Additionally, at the time of his request, Nilsson gave NBD Chicago a personal financial statement that listed his real estate holdings, declared his personal net worth to be more than $7 million, and disclosed his ownership of art, automobiles and certain stock in DNIC Brokerage Company, which was then a small, closely held corporation doing business as Telular, Inc.

Nilsson's loan request was handled by Paul Slade, a commercial real estate loan officer at NBD Chicago. As the amount Nilsson requested exceeded Slade's spending limit, the line of credit had to be approved by the bank's loan committee, which subsequently authorized Slade to extend to Nilsson a one-year, rather than five-year, $500,000 personal line of credit with no restrictions on Nilsson's use of the money. The collateral offered by Nilsson was to be used as the security for the loan and the authorization was to expire on July 1, 1990. The authorization further provided that, if the loan was renewed, Nilsson would be required to pay down 25% of the outstanding balance annually.

On July 5, 1989, Nilsson signed a "Demand Revolving Note" as a promissory note to support the line of credit, without first reading the contents of the document. The promissory note included a description of events that would give rise to default under the terms of the note, as well as an acceleration clause describing the bank's right to acceler-

ate payments due in the event of default. It was not until after signing the promissory note, but before drawing down funds, that Nilsson noticed that the note stated the loan could be called "on demand." Upon questioning the demand feature, Nilsson was allegedly assured by Slade that the loan was for five years and that the demand feature applied only in the event of default.

In June 1990, Nilsson refinanced his home and repaid $250,000 of the line of credit, thereby reducing the maximum spending limit on the line of credit from $500,000 to $250,000. In return, NBD Chicago released its security interest in Nilsson's residence. Immediately thereafter, Nilsson executed a loan modification agreement that stated the "Revolving Note" was "due upon demand." Upon questioning the demand feature, Nilsson was again allegedly assured by Slade that the loan was for five years and that the demand feature applied only in the event of default.

During the summer of 1992, it was announced that NBD Chicago would merge with other subsidiaries of NBD Bancorp throughout the State of Illinois to form NBD Bank of Illinois[1] (the bank). Early that same summer, Mr. Slade left NBD Chicago. Prior to his departure, the authorization for Nilsson's personal line of credit had been renewed each year through 1992. Following Slade's departure, the authorization for Nilsson's personal line of credit was extended until July 1, 1993. Thereafter, some of NBD Chicago's commercial real estate loans, including Nilsson's personal line of credit, were transferred to NBD Bank of Evanston (NBD Evanston), as NBD Evanston was more experienced in commercial real estate loans. Mary Pat Kerrigan was overseeing commercial real estate lending at both banks, while defendant William Lynch was the senior lender for both banks. Responsibility for Slade's customers, including Nilsson, was transferred to defendant Lisa Callahan.

On September 28, 1992, Callahan wrote Nilsson a letter asking Nilsson to replace the "Demand Revolving Note" with a term note maturing on April 1, 1993, as neither Callahan nor Kerrigan liked demand notes. The letter further indicated that, if the term note was not paid when due, the loan would be amortized over the next three years ending on April 1, 1996. Nilsson refused, stating at trial that Callahan's September 28, 1992, letter included a promissory note with a December 31, 1992, date for repayment rather than the April 1, 1993, date implied by her letter. However, December 31, 1992, was actually the maturity date for a $750,000 loan (Halstead loan) issued

---

[1]In 1997, NBD Bank of Illinois merged with the First National Bank of Illinois and is now known as First Chicago NBD Corporation.

to Nilsson as a general partner of Halstead Properties by NBD Chicago on December 24, 1987. The Halstead loan was secured by commercial property located at 2201 S. Halstead, Chicago, Illinois, and was supported by a five-year term note.

On October 27, 1992, Callahan proposed to Nilsson that the Halstead loan be extended for an additional five years to December 31, 1997, rather than terminate on December 31, 1992. As to Nilsson's personal line of credit, Callahan again proposed that Nilsson replace the promissory note for his personal line of credit with a term note that would be due on May 31, 1993, instead of April 1, 1993. However, she further indicated that, if the term note was not paid when due, the loan would be amortized over the next three years to May 31, 1996.

In a letter dated November 4, 1992, Nilsson refused to sign a note that made his personal line of credit due on May 31, 1993. Therein, he stated that: (1) his personal line of credit was approved to be used for any purpose he saw fit; (2) the funds were used as a part of his million dollar investment into Telular, Inc.; (3) the note had a five-year term; and (4) he had paid the loan balance down to $250,000 in order to meet the requirement of a 25% reduction per year. Callahan answered Nilsson by letter on November 16, 1992, stating that the promissory note for Nilsson's personal line of credit was a "demand note with bank approval required on an annual basis." Nilsson, however, again refused to sign a new note. Instead, he requested a fixed date of repayment for July of 1993, with an option for an additional three months.

On February 1, 1993, the bank notified Nilsson that the maturity dates for both the Halstead loan and his personal line of credit had been extended to April 1, 1993, rather than July 4, 1993, as requested. As Halstead Properties signed a new note with the April 1, 1993, maturity date, the bank requested that Nilsson also sign a new note for his personal line of credit with the same April 1, 1993, maturity date. Nilsson again refused.

On March 2, 1993, Lynch, Kerrigan and Callahan met with Nilsson and one of his lawyers to ask Nilsson to move his loans elsewhere. In the interim, they offered to extend the loans coming due either to June 30, 1993, without any fees or new appraisals, or for one year if new appraisals were conducted and fees paid. Nilsson refused. As such, on April 16, 1993, the bank demanded repayment of both the $750,000 Halstead loan and all sums advanced for Nilsson's personal line of credit.

On June 20, 1993, Nilsson refinanced the Halstead loan through Michigan Avenue Bank. Following the refinancing of the Halstead loan, the bank issued Nilsson a payoff letter on July 29, 1993, for the

monies due under his personal line of credit. Thereafter, on August 30, 1993, Nilsson and Halstead Properties filed a 16-count complaint in the circuit court of Cook County against the bank and three of its employees based upon the bank's untimely demand for repayment of his personal line of credit.

On March 13, 1996, the trial court dismissed eight of the counts alleged in plaintiffs' 14-count second amended complaint, filed on June 20, 1995, including a count that alleged a violation of the Illinois Fairness in Lending Act (815 ILCS 120/1 *et seq.* (West 1996)). The court further denied defendants' motion for summary judgment and motion *in limine,* both of which claimed that the promissory note Nilsson signed was a demand note as a matter of law. As all counts brought by or on behalf of Halstead Properties were dismissed by the trial court, Nilsson proceeded to trial on the six remaining counts of Nilsson's third amended complaint: two breach of contract counts, a common law fraud claim, two claims under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 1996)), and a charge of civil conspiracy to violate the Consumer Fraud Act.

Trial commenced on March 23, 1998, and ended on April 15, 1998. During trial, Nilsson presented evidence that, on February 5, 1993, he was obliged to sell 8.93% of his stock in Telular, Inc., for $893,000 in order to retire debt secured by the stock and repay the $250,000 personal line of credit he believed was coming due on April 1, 1993. Further, Nilsson asserted that the funds used to repay the personal line of credit in July 1993 were generated by the sale of an additional 2.02% of his stock in Telular, Inc., for $587,486, which was finalized on August 4, 1993. But for these transactions, Nilsson argued that he would have been entitled to either $15,861,978.22 in cash distributions from the sale of Telular, Inc., stock when the stock was at its highest value, on the date of the stock's initial public offering, or $2,331,000 in cash distributions from the sale of the stock had Nilsson been able to hold the stock until the date of trial.

On April 13, 1998, the trial court directed a verdict against Nilsson on the common law fraud and conspiracy contentions following the close of Nilsson's case. As such, only the two breach of contract claims were submitted to the jury; the Consumer Fraud Act claims were heard by the trial court.

On April 15, 1998, the jury returned its verdict in favor of Nilsson on count II of Nilsson's complaint (breach of contract to loan money for a one-year term), and awarded Nilsson $15,000 in damages. The jury further found in favor of defendants as to count I of the complaint (breach of contract to loan money for a five-year term). That

same date, the trial court entered judgment on the jury's verdict. On June 17, 1998, the trial court entered an order ruling against Nilsson on the merits of his Consumer Fraud Act claims.

On July 17, 1998, Nilsson filed his posttrial motion, which was subsequently denied by the trial court on November 18, 1998. Thereafter, Nilsson and defendants timely filed their notices of appeal on December 2, 1998, and December 14, 1998, respectively.

## OPINION

### I

Nilsson contends that the trial court erred in denying his motion for a new trial on damages only as to count II of his complaint or, in the alternative, a new trial on all issues as to both breach of contract counts. Specifically, Nilsson asserts that a new trial is warranted as the trial court erred: (1) in refusing the standard jury instruction, Illinois Pattern Jury Instructions, Civil, No. 700.13 (3d ed. 1995) (hereinafter IPI Civil 3d No. 700.13), and in giving defendants' modified jury instruction over objection; and (2) in barring the opinion testimony of William DeNicolo on the value of stock in Telular, Inc. Noting that the trial court's ruling on a motion for new trial will not be reversed unless it is shown that the trial court abused its discretion (*Snover v. McGraw*, 172 Ill. 2d 438, 449, 667 N.E.2d 1310, 1316 (1996)), we address each of Nilsson's claims in turn.

■ As to Nilsson's jury instruction argument, there is no dispute that litigants are entitled to have the jury instructed on the legal principles applicable to the facts of the case. *NWI International, Inc. v. Edgewood Bank*, 291 Ill. App. 3d 247, 258, 684 N.E.2d 401, 408 (1997). The test of a jury instruction's propriety is whether it fairly and accurately states the law. *Wind v. Hy-Vee Food Stores, Inc.*, 272 Ill. App. 3d 149, 154, 650 N.E.2d 258, 261 (1995). The trial court's failure to give complete and correct instructions is error when the evidence is conflicting or the facts are closely balanced. *Korpalski v. Lyman*, 114 Ill. App. 3d 563, 568, 449 N.E.2d 211, 215 (1983); *Winn v. Inman*, 119 Ill. App. 3d 836, 840-41, 457 N.E.2d 141, 145 (1983). However, a new trial will be granted only where a party shows that its right to a fair trial has been seriously prejudiced by the denial of an instruction. *NWI*, 291 Ill. App. 3d at 258, 684 N.E.2d at 408.

■ In the case at bar, Nilsson attempted to have the jury instructed using the standard IPI Civil 3d No. 700.13, which instructs the jury as follows:

"In calculating plaintiff's damages, you should determine that sum of money that will put the plaintiff in as good a position as he

would have been in if both plaintiff and defendant had performed all of their promises under the contract." ·

As modified by defendants, the instruction tendered to the jury and approved by the trial court added the following sentence: "This amount of money should reflect the amount of damages that exist as of the date you reach your verdict." The proper measure of damages in a breach of contract action, however, is one that places the injured party in the same position at the time of judgment as he would have been had the contract been performed. *American National Bank & Trust Co. v. Erickson*, 115 Ill. App. 3d 1026, 1030, 452 N.E.2d 3, 6 (1983); *Mercantile Holdings, Inc. v. Keeshin*, 261 Ill. App. 3d 546, 550, 633 N.E.2d 805, 808 (1993). Whether the proper measure of damages is one arising from the highest value of the stock between the date of the breach and the date that judgment was entered, or at any time during the term of the loan, is a question of fact as damages are within the discretion of the jury. *Snover*, 172 Ill. 2d at 447, 667 N.E.2d at 1315; *Branum v. Slezak Construction Co.*, 289 Ill. App. 3d 948, 952, 682 N.E.2d 1165, 1168 (1997).

■ While we agree with Nilsson that it was error for the lower court to instruct the jury with defendants' modified instruction since Nilsson's instruction fairly and accurately stated the law (*Wind*, 272 Ill. App. 3d at 154, 650 N.E.2d at 261), we do not agree that Nilsson's right to a fair trial has been seriously prejudiced as a result thereof (*NWI*, 291 Ill. App. 3d at 258, 684 N.E.2d at 408). Accordingly, the error is harmless. Nevertheless, Nilsson contends that the trial court also erred in barring the opinion testimony of William DeNicolo, the founder of DNIC Brokerage Company, on the value of Nilsson's stock in Telular, Inc., as of January 1994.

The trial court granted defendants' motion *in limine* to bar the opinion of DeNicolo, ruling that the value of Nilsson's lost stock must be determined as of the date of the judgment. Again, we note that the proper measure of damages in a breach of contract action is one that places the injured party in the same position at the time of judgment as he would have been had the contract been performed. *Erickson*, 115 Ill. App. 3d at 1030, 452 N.E.2d at 6; *Keeshin*, 261 Ill. App. 3d at 550, 633 N.E.2d at 808. Although Nilsson argues that what is proper in the instant case is to measure the value of Nilsson's lost stock from January 24, 1994, the date where the stock was at its highest value (see *Keeshin*, 261 Ill. App. 3d at 548, 633 N.E.2d at 807), we agree with the trial court that such a date would produce a windfall in Nilsson's favor and would *not* put him in the same position he would have been in had the breach of contract not occurred.

■ Moreover, damages are within the discretion of the jury, as they

present a question of fact. *Snover*, 172 Ill. 2d at 447, 667 N.E.2d at 1315. The exception to the rule, however, is that a reviewing court may order a new trial or overturn a jury verdict when damages are manifestly inadequate or if it is clear that proven elements of damages have been ignored or the award bears no reasonable relationship to the loss suffered by the plaintiff. *Branum*, 289 Ill. App. 3d at 952-53, 682 N.E.2d at 1168. In those cases, a new trial as to damages only may be awarded where:

"(1) the jury's verdict on the question of liability is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict, nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability." *Robbins v. Professional Construction Co.*, 72 Ill. 2d 215, 224, 380 N.E.2d 786, 790 (1978).

In our view, the jury's verdict on liability is amply supported by the evidence. Defendants asked the jury to award $6,500; the jury awarded $15,000. Evidence in the record refers to $12,000 Nilsson would have received in July 1993 had he not sold 8.93% of his stock in Telular, Inc. We cannot say that the jury award in this amount was not based upon evidence adduced regarding damages resulting from the breach. In contradistinction to the $15,000 jury award, Nilsson requested an award of $2.3 million as consequential damages for lost profits and distributions from the sale. Clearly, the jury rejected Nilsson's request for consequential damages.

The standard of review of a jury verdict is whether the verdict is against the manifest weight of the evidence. *NWI*, 291 Ill. App. 3d at 259, 684 N.E.2d at 409. A reviewing court will not overturn a jury's award, finding it to be against the manifest weight of the evidence, merely because it can be characterized as less than generous or because a party is dissatisfied with the award. *Branum*, 289 Ill. App. 3d at 953, 682 N.E.2d at 1168. Rather, it is of no consequence that the award differs from an estimate of damages made by an expert, for a jury may reduce an expert's damage calculation without invalidating its verdict. *Branum*, 289 Ill. App. 3d at 953, 682 N.E.2d at 1168. The mere fact that the verdict is less than the claimed damages does not necessarily mean the award is inadequate (*Branum*, 289 Ill. App. 3d at 953, 682 N.E.2d at 1168), particularly since the jury is free to determine the credibility of witnesses and to assess the weight accorded to their testimony (*Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992)). To the contrary, a reviewing court will

affirm verdicts, *however low*, which are sustained by evidence or the absence of particular evidence. *Buttita v. Stenberg*, 246 Ill. App. 3d 1012, 1022, 617 N.E.2d 122, 128 (1993). " 'Absent some indication that the jury failed to follow some rule of law, considered some erroneous evidence, or an indication in the record that the verdict was the obvious result of passion or prejudice, we cannot upset that verdict.' " *Buttita*, 246 Ill. App. 3d at 1024, 617 N.E.2d at 129, quoting *Perry v. Sturzbach*, 206 Ill. App. 3d 1065, 1069, 565 N.E.2d 211, 214 (1990). In short, damages are the jury's prerogative, not the appellate court's. *Buttita*, 246 Ill. App. 3d at 1024, 617 N.E.2d at 129; *Snover*, 172 Ill. 2d at 446, 667 N.E.2d at 1314.

Accordingly, we cannot find that the court's exclusion of DeNicolo's opinion was an abuse of discretion resulting in substantial prejudice that affected the outcome of the trial. *O'Donnell v. Holy Family Hospital*, 289 Ill. App. 3d 634, 646, 682 N.E.2d 386, 394 (1997). Rather, in our view, the jury's verdict was amply supported by the evidence presented at trial, regardless of the lower court's harmless error in refusing the standard jury instruction IPI Civil 3d No. 700.13. Thus, we hold that the trial court did not commit error when it denied Nilsson's motion for a new trial.

## II

■ Nilsson next contends that the trial court erred in directing a verdict against him on his common law fraud claim, as there is clear and convincing evidence of each element of fraud to prevail on such a claim. We disagree. In granting defendants' motion for a directed verdict, the trial court relied on *Belleville National Bank v. Rose*, 119 Ill. App. 3d 56, 456 N.E.2d 281 (1983). In *Belleville*, the bank filed a foreclosure action against the makers of a promissory note secured by a certain tract of land. The court held that a party who signs a written agreement and has had an opportunity to review it may not subsequently claim that he was fraudulently induced to enter into the agreement based on misrepresentations as to its terms. *Belleville*, 119 Ill. App. 3d at 59, 456 N.E.2d at 284. Quoting *Leon v. Max E. Miller & Sons, Inc.*, 23 Ill. App. 3d 694, 699-700, 320 N.E.2d 256, 260 (1974), the *Belleville* court indicated:

> " 'One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. [Citation.] And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations.' " *Belleville*, 119 Ill. App. 3d at 59, 465 N.E.2d at 284.

Moreover, the court held that, given the parties' experience in real estate financing, including demand notes, no exceptions to the general rule were found that would indicate a manifestly unequal bargaining position between the parties. *Belleville*, 119 Ill. App. 3d at 61, 465 N.E.2d at 285; *cf. Melvin State Bank v. Crowe*, 97 Ill. App. 2d 82, 239 N.E.2d 483 (1968).

■ In the instant case, Nilsson testified that, upon questioning the demand feature in both the initial "Demand Revolving Note" and the subsequent loan modification, he was assured by Slade that the loan was for five years and that the demand feature applied only in the event of default. Slade, however, testified that he did not intend to mislead Nilsson. Rather, it was the regular practice of the bank to use demand provisions on one-year loans and to call the loans only in the event of default. After reviewing the evidence presented, we agree that the bank's "practice" of using default language and not calling demand notes until an event of default was not synonymous with misrepresentation about what the documents contained, as was indicated by the lower court, particularly where it is undisputed that: (1) Nilsson had the opportunity to read the promissory notes before signing them and discover that the terms of the notes were not the same as the terms that plaintiff claims were presented to him orally by Slade; and (2) Nilsson was an experienced or qualified businessman who had entered into various real estate loans with NBD Chicago before and after signing the notes for his personal line of credit. See *Belleville*, 119 Ill. App. 3d at 59-61, 456 N.E.2d at 284-85.

■ Generally, in order to establish a claim for common law fraud in Illinois, a plaintiff must allege and prove:

" '(1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury.' " *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75, 643 N.E.2d 734, 754 (1994), quoting *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542-43, 607 N.E.2d 194, 198 (1992).

See also *Ault v. C.C. Services, Inc.*, 232 Ill. App. 3d 269, 271, 597 N.E.2d 720, 722 (1992). Additionally, while plaintiff's reliance on a misrepresentation must be justifiable, this does not mean that his conduct will be reasonable under the circumstances. *Chicago Title & Trust Co. v. First Arlington National Bank*, 118 Ill. App. 3d 401, 409, 454 N.E.2d 723, 729 (1983). " 'The plaintiff's conduct must not be so

unreasonable, in light of the information open to him, that the law may properly say that this loss is his own responsibility.' " *Chicago Title*, 118 Ill. App. 3d at 409, 454 N.E.2d at 729, quoting W. Prosser, Torts § 108, at 715 (4th ed. 1971). As Nilsson failed to present any evidence that he reasonably relied on Slade's alleged statements after he signed the "Demand Revolving Note" or subsequent loan modification agreement, or that Slade intended to deceive Nilsson with his statements, we agree with the trial court that Nilsson failed to establish the elements required to succeed under a common law fraud claim.

■ Accordingly, the trial court's order directing a verdict in favor of defendants should be affirmed, as all of the evidence, when viewed in its aspect most favorable to Nilsson, so overwhelmingly favors defendants that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967).

### III

Nilsson next contends that the trial court erred in finding that defendants did not violate the Consumer Fraud Act (815 ILCS 505/1 *et seq.* (West 1996)), as the manifest weight of the evidence shows otherwise. Specifically, Nilsson argues that defendants violated the Act by inserting a demand feature into the promissory note signed by Nilsson.

■ The elements of a cause of action brought pursuant to the Consumer Fraud Act are: (1) a deceptive act or practice by defendant, (2) an intent on the defendant's part that plaintiff rely on the deception, and (3) the deception occurred in the course of conduct involving trade or commerce. *Siegel*, 153 Ill. 2d at 542, 607 N.E.2d at 198; *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501, 675 N.E.2d 584, 593 (1996). Plaintiff's reliance is not an element of statutory consumer fraud; rather, a claim must show that the consumer fraud proximately caused plaintiff's injury. *Connick*, 174 Ill. 2d at 501, 675 N.E.2d at 593. The intent required is merely the defendant's intent that the plaintiff in the action rely on the act that defendant performed or information defendant gave to plaintiff, as opposed to any intent on the defendant's part to deceive. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.*, 197 Ill. App. 3d 948, 953, 557 N.E.2d 246, 250 (1990).

At trial, Nilsson offered evidence that the deceptive act committed by the bank and its loan officers was the insertion of a demand feature into the promissory note signed by Nilsson. Nilsson further asserted that the "deception" continued when defendants sought to enforce

the demand feature of the note notwithstanding the true intent of the parties to execute a term loan rather than a demand loan. Nilsson, however, did not present any additional evidence on the consumer fraud claim other than the evidence for the breach of contract claims. Nor did he present any evidence that the insertion of a demand feature is part of some deceptive lending practice by the bank. Rather, the evidence adduced during the trial showed that Nilsson and the bank merely disagreed on the interpretation of the contract between them, which resulted in a simple breach of contract.

In its June 17, 1998, order, the trial court found that Nilsson's claim for damages as a result of the bank's alleged violation of the Act failed because the evidence offered at trial did not show that the bank's actions amounted to an act of deception. Moreover, the court noted that not every individual breach of contract between two parties amounts to a cause of action cognizable under the Consumer Fraud Act. *Golembiewski v. Hallberg Insurance Agency, Inc.*, 262 Ill. App. 3d 1082, 1093, 635 N.E.2d 452, 460 (1994). Rather, the Consumer Fraud Act should not apply to simple breach of contract claims because if the Act did apply to such claims, common law breach of contract actions " 'would be supplemented in every case with an additional and redundant remedy.' " *Golembiewski*, 262 Ill. App. 3d at 1093, 635 N.E.2d at 460, quoting *Exchange National Bank v. Farm Bureau Life Insurance Co.*, 108 Ill. App. 3d 212, 216, 438 N.E.2d 1247, 1250 (1982). The lower court further indicated:

"Even if the single commercial transaction between Nilsson and [the bank] fell within the contemplated realm of the Consumer Fraud Act, Nilsson would still be unable to recover for a violation of the Act because he failed to prove that [the bank's] actions proximately caused his damages. Illinois law recognizes that while the transaction may have been induced by a misrepresentation, proximate causation limits recovery to ' "those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." ' [*Martin*, 163 Ill. 2d at 60, 643 N.E.2d at 748, quoting W. Prosser, Torts § 110, at 732 (4th ed. 1971)]."

After reviewing the evidence, we agree with the trial court that Nilsson's claim for damages as a result of the bank's alleged violation of the Act failed because the evidence offered at trial did not show that the bank's actions amounted to an act of deception. Additionally, Nilsson failed to prove that defendant's alleged misrepresentation about the terms of the loan could have proximately caused the type of damages incurred by Nilsson, since there is no evidence either that Nilsson sought additional funds from other entities for repayment of the personal line of credit or that Nilsson did not have an

otherwise ample cash flow from his personal investments to allocate funds for payment of the loan. Accordingly, based on the evidence presented at trial, we cannot agree that the trial court erred in finding that defendants did not violate the Consumer Fraud Act.

## IV

Nilsson further contends that the trial court erred in dismissing his contention that defendants violated the Illinois Fairness in Lending Act (Lending Act) (815 ILCS 120/1 *et seq.* (West 1996)), as the plain and unambiguous language of the Lending Act authorizes a cause of action against the bank. Defendants contend, however, that since Halstead Properties' claim under the Lending Act was dismissed because the partnership was not a "person" as defined therein, the loan was not subject to the Lending Act and Nilsson could not likewise state a claim under the Lending Act for the same loan.

█ It is settled in Illinois that a cause of action should not be dismissed unless it clearly appears that no set of facts can be proved that will entitle plaintiff to recover. *Grimaldi v. Webb*, 282 Ill. App. 3d 174, 179, 668 N.E.2d 39, 42 (1996). Further, in considering a motion to dismiss, all well-pleaded facts in a complaint must be taken as true with all inferences from it to be drawn in favor of the nonmovant. *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 362-63, 657 N.E.2d 1095, 1101 (1995).

In the case *sub judice*, plaintiffs' second amended complaint alleged violations of section 3 of the Lending Act (815 ILCS 120/3 (West 1996)) because: (1) the bank refused financing for 2201 S. Halstead Street, Chicago, Illinois, the parcel of property that secured the Halstead loan and was allegedly "cross-collateralized" with Nilsson's personal line of credit; (2) the bank "denied or varied the terms of the Nilsson personal line of credit notwithstanding all of the regular and dependable income of each person who would be liable for repayment of the loan;" and (3) the bank "utilized standards that have no economic basis and which are discriminatory in effect" in that Callahan made statements that the bank no longer desired to finance real estate in "black high crime areas." In response, defendants moved to dismiss because "the complaint failed to allege conduct on the part of [defendants] which violates said Act and which damaged Nilsson."

█ A thorough review of the record indicates that the promissory notes for the Halstead loan and Nilsson's personal line of credit had cross-default provisions providing that a default under one note would allow the bank to demand payment under the other. However, the notes did *not* allow the bank to use the collateral pledged as security for one loan to satisfy the requirements under the other loan, as Nils-

son contends; even if Nilsson defaulted under the personal line of credit and the bank demanded payment for the Halstead loan, the bank could not have used the collateral pledged for the Halstead loan to satisfy the debt owed under Nilsson's personal line of credit. Rather, as correctly indicated by the lower court in its ruling, the only direct violation of the Lending Act from Nilsson's complaint concerns whether the bank considered Nilsson's regular and dependable income, as required. Nevertheless, while Nilsson made allegations that Callahan stated that the bank did not want to do business with him any longer, the exhibits at trial showed that defendants did, in fact, consider Nilsson's income as was required by the Lending Act. Accordingly, we agree that the complaint alleges no material facts that, if proven, would entitle plaintiff to recover (*Grimaldi*, 282 Ill. App. 3d at 179, 668 N.E.2d at 42); therefore, we cannot find that the trial court erred in dismissing Nilsson's contention that defendants violated the Illinois Fairness in Lending Act (815 ILCS 120/3 (West 1996)).

## V

In their cross-appeal, defendants contend that the trial court erred in denying their pretrial motions relating to whether the "Demand Revolving Note" was a demand note as a matter of law. Nilsson responds that defendants waived their right to appellate review of this issue, as defendants failed to file a posttrial motion seeking review before the trial court. We agree.

Defendants moved for summary judgment on the ground that the promissory note signed by Nilsson in support of his personal line of credit was a demand note as a matter of law and, therefore, the note could be called at any time. The defendants also moved *in limine* to bar parol evidence about the parties' discussions and understanding about the loan. The trial court denied both motions on the ground that the presence of an event of default provision in the promissory note made it ambiguous. After the trial court entered judgment on the jury verdict, finding in favor of Nilsson as to the breach of contract to loan money for a one-year term, Nilsson timely filed a posttrial motion, which was subsequently denied by the trial court. However, defendants failed to file a posttrial motion; therefore, they have failed to preserve the issue of whether the promissory note was a demand note as a matter of law on review. *Malott v. Hart*, 167 Ill. App. 3d 209, 211, 521 N.E.2d 137, 138 (1988). Moreover:

> "Where, as here, the issue contained in a denied motion for summary judgment is then decided at trial, the ruling denying the summary judgment merges in the judgment entered after trial, and error in the denial cannot be raised on appeal from that judgment." *Carpenter v. Mobile World, Inc.*, 194 Ill. App. 3d 830, 838, 551 N.E.2d 724, 729 (1990).

Accordingly, for all of the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

McNULTY and GORDON, JJ., concur.