BELLEVILLE NATIONAL BANK, Plaintiff-Appellee, *v.* MARVIN L. ROSE *et al.*, Defendants-Appellants.

Fifth District   No. 83—23

Opinion filed November 4, 1983.

Carl W. Lee, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellants.

Preston K. Johnson, Sr., and Preston K. Johnson, Jr., both of Belleville, and John Michael Clear and John I. Alber, both of St. Louis, Missouri (Johnson & Johnson and Bryan, Cave, McPheeters & McRoberts, of counsel), for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On March 14, 1978, defendants Marvin and Virginia Rose signed a promissory note for $810,000, payable to plaintiff Belleville National Bank. The first line of the note stated that the debt was payable, "On Demand, and if no demand be made, then payable Five (5) Years after date ***." At the same time, a second note was signed, purportedly to facilitate intermediate draws on additional loan funds without additional documentation. There was never a question that only one debt was owed. The second note read as follows:

"FOR VALUE RECEIVED, We hereby promise to pay to BELLEVILLE NATIONAL SAVINGS BANK, Belleville, Illinois, or order, on demand or if no demand be made, then due and payable Five (5) Years from the date thereof, the sum of EIGHT HUNDRED TEN THOUSAND ($810,000) DOLLARS, together with interest at the rate of Nine (9%) Per Cent per annum, payable quarterly."

Defendants signed two additional notes for another single loan on November 20, 1978. The form of the notes was identical to those issued previously, though the amount of the loan was $60,000 and the interest rate 9½%. Defendants secured both loans for the purpose of

purchasing and developing a tract of land known as "Rosewood," and this tract was pledged as collateral. Defendants claim they did not read any of the documents before signing. On July 23, 1979, plaintiff notified defendants that the interest rate on the unpaid balance of the loans would be increased. At a meeting with the president of the Belleville National Bank, at which defendant Marvin Rose was accompanied by counsel, Mr. Rose requested that the interest rate not be increased, but this request was not acceded to by the bank. Defendants subsequently made payments at the higher rate of interest. On November 21, 1979, plaintiff notified defendants that the notes would be called unless they were refinanced. On December 31, 1979, defendants signed a new note for $705,000, payable "[o]n demand and if no demand be made, then payable March 14, 1983," with interest that would fluctuate in accord with the prime rate.

Plaintiff called the note on July 10, 1981. Alleging that plaintiff had misrepresented the terms of the original notes by falsely telling defendants that the notes were for fixed five-year terms at fixed interest rates, thus securing the loans by fraud, defendants filed an action against plaintiff in the circuit court of St. Clair County on September 30, 1981. Plaintiff simultaneously answered defendants' petition and instituted the instant litigation by filing its own separate foreclosure action on October 23, 1981. Plaintiff's motion for summary judgment was granted on October 28, 1982, and final judgment was entered on December 8, 1982. From this judgment, defendants appeal. In granting plaintiff's motion, the trial court concluded the defense of fraud offered by defendants was deficient as a matter of law, since the rule in Illinois is that "a party who signs a written agreement and has had the opportunity to review it, may not subsequently claim that he was fraudulently induced to enter into the agreement based on misrepresentations as to its terms." The court further stated that, under Illinois law, a party who is fraudulently induced to enter a contract waives the right to assert a claim of fraud when that party subsequently learns of the fraud and agrees to modify the agreement, and that defendants' refinancing of the original loans constituted such a waiver. On appeal, defendants challenge these conclusions and further argue that plaintiff, by failing to deny the affirmative defense of fraud set forth in defendants' answer, admitted the truth of the defense for purposes of summary judgment pursuant to section 2—610 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—610(b)).

We first consider defendants' contention that the court erred in ruling that the defense of fraud was deficient as a matter of

law. For the sake of clarity, we must distinguish two categories of fraud traditionally employed in actions upon written instruments. *Fraud in the execution* of an instrument is practiced " '*** where the instrument is misread to the party signing it, *or where there is a surreptitious substitution of one paper for another,* or where, by some other trick or device, a party is made to sign an instrument which he did not intend to execute.' " *(Turzynski v. Libert* (1970), 122 Ill. App. 2d 352, 358-59, 259 N.E.2d 295, 298, quoting *Papke v. G. H. Hammond Co.* (1901), 192 Ill. 631, 635.) *Fraud in the inducement,* on the other hand, exists where "the party fully understands what he is signing, and is aware of the nature and character of the instrument executed by him, but is deceived by fraudulent representations as to the facts outside the instrument itself." (192 Ill. 631, 635.) While defendants' brief repeatedly asserts that both types of fraud may avoid a written agreement, and indeed seeks to characterize the instant case as one involving "fraud in the execution," defendants' counsel specifically stated at oral argument that the fraud alleged in the present action is properly characterized as "fraud in the inducement." We set forth this distinction to demonstrate, first, that we are aware of it, and second, that confusion may have been engendered by its application in the case at bar. For the reasons discussed below, we do not believe that the label assigned to the alleged fraud is itself dispositive of the action..

 ■ The defense of fraud is, in most situations, unavailable to avoid the effect of the written agreement where the complaining party could have discovered the fraud by reading the instrument, and was in fact afforded a full opportunity to do so. This elementary principle of contract law was aptly stated in *Leon v. Max E. Miller & Sons, Inc.* (1974), 23 Ill. App. 3d 694, 699-700, 320 N.E.2d 256, 260:

> "One is under a duty to learn, or know, the contents of a written contract before he signs it, and is under a duty to determine the obligations which he undertakes by the execution of a written agreement. [Citation.] And the law is that a party who signs an instrument relying upon representations as to its contents when he has had an opportunity to ascertain the truth by reading the instrument and has not availed himself of the opportunity, cannot be heard to say that he was deceived by misrepresentations."

We note parenthetically the statement in appellant's brief that fraud in the execution may avoid a contract even though the defrauded party had a full opportunity to read the written agreement is, to our mind, a contradiction in terms, since fraud in the execution, by defini-

tion, involves some deception whereby the party is denied a full opportunity to read the document. There is no question that defendants in the instant case had the opportunity to read the note they signed and discover that the terms of the note were not the same as the terms which defendants claim were presented to them orally. The issue, then, is whether the bank's alleged conduct, whatever its name, was such as to remove the present action from the established rule of law.

Defendants have directed our attention to cases where fraud has been recognized as a defense to an action on a written contract where the guarantor of a corporate obligation claimed that a bank officer had misrepresented that the bank was an investor in a business venture (*Colonial Bank & Trust Co. v. Kozlowski* (1982), 106 Ill. App. 3d 639, 435 N.E.2d 1251); where a maker executed a note in substitution of a prior obligation in reliance on the payee's alleged promise that, pursuant to a complex scheme involving tax evasion, the maker would not be held liable on the note (*Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307); where it was claimed that false representation was made to the makers of the note that they were not, by reason of signing the document, obligated to pay (*Kuh v. Williams* (1973), 13 Ill. App. 3d 588, 301 N.E.2d 151); where the purchaser of corporate assets relied upon the seller's alleged misrepresentations concerning the company's prior compliance with Federal regulations (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 437 N.E.2d 817); and where a cosigner of a note claimed she was told that the note was a paper necessary to transfer a banking account (*Melvin State Bank v. Crowe* (1968), 97 Ill. App. 2d 82, 239 N.E.2d 483).

Of the aforementioned cases, all except *Melvin State Bank v. Crowe* are distinguishable from the instant case on the ground that the fraud alleged in each instance was not discoverable upon reading the terms of the respective documents that bound the parties. This would appear to be why, again with the exception of *Melvin*, the rule that a party may not avoid an instrument signed by him on the basis of fraud when the party could have discovered the truth by reading the instrument is not discussed in any of these cases. The written agreement at issue in *Melvin* was avoided on the basis of lack of consideration. The court nevertheless proceeded to state why the specific facts of that case would provide an exception to the established rule:

> "The Bank's position that only fraud in the execution and not fraud in the inducement will avoid an instrument where a person has a full opportunity to read the instrument is not tenable here. First, it is a complete answer that a false representation

as to a nonexistent prior obligation will not create such an obligation and thus supply a consideration. Second, such a false representation by an experienced banker, possibly in the presence of an employer, is calculated to disarm an inexperienced person. Third, it affirmatively appears that the judgment note was not explained to [defendant]. Fourth, it is obvious that [defendant] did not understand the matter of the guarantee agreement because she signed it on an occasion when the banker told her she had already signed it." 97 Ill. App. 2d 82, 96.

■■ ■ It is our judgment that the factors in *Melvin* which together constituted an exception to the established rule are not present in the case at bar. While the alleged misrepresentation to defendants was made by an experienced banker, the misrepresentation cannot reasonably be viewed as one made to an inexperienced person within the context of *Melvin.* The situation in that case was one in which a woman with an eighth grade education, "not familiar with financial arrangements," was induced by a bank officer to invest funds in her employer's business. Thereafter, she was visited by the same bank officer at the factory where she worked and purportedly told that certain papers needed to be signed to transfer a bank account of that business. She proceeded to sign a guarantee agreement and cosign a note for payment of $15,000 that her employer had borrowed from the bank. The fact that the documents in *Melvin* were neither explained to the signer nor understood by her cannot, in itself, dictate an exception to the rule that fraud is not a defense available to one who is afforded a full opportunity to discover the fraud by reading the instrument. Otherwise, the rule is rendered meaningless. Rather, the lack of explanation and understanding must be seen within the framework of what the court apparently viewed as the manifestly unequal position of the parties. Such inequality is not a factor in the present action. Defendant Marvin Rose is a professional real estate broker who previously signed demand notes in the course of his business. It would be unreasonable to assume that, by reason of the banker's presence, defendants were intimidated into signing the document, or that defendants would not have realized, upon reading the first line of the instrument, that the note they were signing would be payable on the bank's demand. There is thus no satisfactory basis upon which the instant case may be excepted from the established rule.

■■ ■ Defendants further contend that summary judgment was inappropriate because plaintiff failed to deny the affirmative defense of fraud raised in defendants' answer, thus admitting the truth of the

defense pursuant to section 2—610 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—610(b)). Such a failure to reply, however, admits only well-pleaded facts in the answer, and in no way ratifies the legal conclusion drawn by the pleader of an affirmative defense. (*Hall v. Humphrey-Lake Corp.* (1975), 29 Ill. App. 3d 956, 963, 331 N.E.2d 365, 371.) The facts alleged in the answer are not subject to dispute. Rather, the contested issue is whether the facts alleged in the answer are sufficient to constitute a valid legal defense. Since we have determined that the defense of fraud is, as a matter of law, unavailable in the instant case, the mere admission of the facts set forth in defendants' answer does nothing to bar summary judgment. This determination also renders unnecessary a consideration of defendants' claim that the trial court erred in finding that the defense of fraud was waived by execution of the demand note of December 31, 1979, whereby the original note was refinanced in accord with the shifting interest rate.

The judgment of the trial court is affirmed.

Affirmed.

JONES and KASSERMAN, JJ., concur.