AMERICAN SAVINGS ASSOCIATION, successor in interest to Citizens Savings, Plaintiff-Appellee and Cross-Appellant, *v.* JOHN H. CONRATH *et al.*, Defendants-Appellants and Cross-Appellees.

Fifth District   No. 5—83—0346

Opinion filed April 6, 1984.

Thomas A. Thebus, of O'Fallon, for appellants.

Patrick M. Flynn, of Jennings, Tedesco, Flynn & Guymon, of Belleville, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

This appeal follows a judgment of foreclosure entered in the circuit court of St. Clair County. A judicial sale took place pursuant to this judgment, but was set aside by order of the trial court pending this appeal. The issues presented on appeal are (1) whether foreclosure should have been precluded as violative of the Illinois usury statute (Ill. Rev. Stat. 1981, ch. 17, par. 6404(2)(b)), (2) whether foreclosure should have been precluded as violative of Federal truth-in-lending regulations (12 CFR 226.8), and (3) whether foreclosure should have been precluded by the doctrine of equitable estoppel. The issues presented on cross-appeal are (1) whether the trial court acted properly in setting aside the judicial sale, and (2) whether the cause should be remanded to the trial court for a determination of the issue of defendant's entitlement to attorney fees and costs incurred pursuant to the appeal.

On September 13, 1977, defendants John H. Conrath, Willard J. Conrath, Mary Beth Conrath, and Anna Conrath signed a note for $112,000, payable to Belleville Citizens Savings, predecessors in interest to plaintiff American Savings Association. As collateral for the loan, defendants mortgaged their interest in two eight-unit apartment buildings in the city of Belleville. The terms of the note called for the principal and interest to be paid in monthly installments of $902, beginning on the first day of October 1977. The instrument, as it appears in the record, proceeds to state, "The entire principal balance of this note will be due and payable five (5) years from date." By two letters dated August 4, 1982, defendants were advised that their loan would reach maturity on September 13, 1982, and that current mar-

ket conditions dictated an increase in the interest rate of the loan from 9% to 15% for the following 12 months. On August 26, 1982, defendants were notified by letter that if they failed to execute a proposed loan modification agreement subjecting the loan to the higher interest rate, the loan would be considered in default, and a foreclosure action would ensue. Defendants failed to execute the loan modification agreement, and plaintiff initiated the present action on October 8, 1982. Following judgment for plaintiff, a judicial sale was held on April 26, 1983. The order setting aside the sale was entered on May 9, 1983.

Additional documents furnished to defendants at the time the note was executed provided no indication that the balance of the loan was payable in five years. The loan settlement statement indicated only that the loan would be payable at a 9% interest rate in monthly payments of $902. The loan passbooks indicated a loan of 30 years at 9%. Federal truth-in-lending statements furnished to defendants stated that "[p]ayments for principal and interest on this transaction shall be 360 monthly installments of $902.00 beginning on the 1st day of October 1977 and due on the 1st day of each month thereafter." Defendants John and Willard Conrath testified that they were unaware of the five-year call provision in the note, and that they would not have signed the note had they been aware of the provision. Each admitted, however, that he did not thoroughly read the note, and that the provision could have been present on the face of the note at the time of its execution. On direct examination, John Conrath alluded to an "experiment" conducted by himself and his attorney regarding the typed lines of the note:

"Q. With regard to the typing of this line [the five-year call provision], do you notice anything unusual about the way it's typed?

A. Well, it's -- It's regular typing from any standard typewriter. As far as unusual, it's typed in between the standard form paragraphs. That's about the only thing I could say is unusual about it, and the fact that it doesn't seem to possibly be written at the same time.

Q. Okay. Did you and I conduct an experiment in my office with that -- a copy of that same note with regard to how it was typed?

A. Yes, we did, uh huh.

Q. Okay, and if I could, just for purposes of illustration, let's say that we were to draw a line on this note through the various lines of typing. Now, if you would refer to -- This is a

straight line, is it now, running down through the lines of typing?

A. Yes, it is.

Q. Okay, how many lines of typing does it run through?

A. It runs through four different lines of typewritten print.

* * *

Q. And what is the [fourth] typed line?

A. The next typed line reads, 'The entire principal balance of this note will be due and payable five years from date,' and the projected line projects down through that line and goes directly through a letter as opposed to between the spaces.

Q. Now, have you had an occasion to observe typed pages previously? I assume in your business you see typed pages?

A. Yes, that's correct, uh huh.

Q. Do the letters that are typed on a page normally line up one above the other?

A. Yes, if you put it in the typewriter and type several lines, the typewriter make-up in itself will actually usually line the letters up to where the spaces are one above the other.

Q. What does this indicate to you as to the typing of that particular line?

A. Well, the only conclusion that I can draw from this little experiment is the fact that the main portion -- main lines of the note being the amount and the other three lines that were typed were typed at one time, and the fourth line, which is the clause in question here about the five-year recall, was put into the typewriter at a different time and typed at a different time since they do not line up as they would had they been typed all at that one time."

■ We consider first defendants' contention that plaintiff's calling of the note for defendants' failure to execute the loan modification agreement was a violation of the Illinois usury statute (Ill. Rev. Stat. 1981, ch. 17, par. 6404(2)), which prohibits changes in interest rates on loans secured by residential property, except when such an increase is authorized by Congress or Federal regulatory agencies. Defendants argue that since the increase requested by Citizens Savings was unauthorized by congressional or regulatory action, plaintiff's calling of the note was thus violative of the Illinois statute. Defendants' assertion that the mortgaged apartment buildings are residential real estate within the meaning of section 6404, however, is unsubstantiated either by case law or dispassionate reason. The case of *Brandenburg v. Country Club Building Corp.* (1928), 332 Ill. 136,

163 N.E. 440, cited by defendants, held merely that the erection and management of an apartment building was not a breach of a covenant restricting property to residential structures. An installment contract for the sale of real estate acquired for the purpose of generating rental income has been held to be a "business loan" for purposes of the Illinois usury statute (Ill. Rev. Stat. 1981, ch. 17, par. 6404(1)(c), formerly Ill. Rev. Stat. 1975, ch. 74, par. 4(c)). (*Huss v. Maras* (1979), 77 Ill. App. 3d 554, 557, 396 N.E.2d 92.) Since it is undisputed that the loan executed by defendants in the instant case was for the purpose of acquiring the apartment buildings in order to generate and distribute rental profits, the property cannot properly be characterized as "residential property" within the meaning of section 6404. We therefore determine that the bank's calling of the note on the basis of defendants' failure to modify the loan agreement was not, in itself, a violation of State law.

We next consider defendants' contention that plaintiff's foreclosure action was a violation of Federal truth-in-lending regulations. Federal law in effect at the time the note was executed required specific disclosure, under certain circumstances, of the fact that a loan contained terms requiring the debtor to make any payment greater than twice the amount of an otherwise regularly scheduled payment. Defendants cite the following provisions of Federal regulation Z (12 CFR 226.8) as they existed in September of 1977:

> "(b) *Disclosures in sale and non-sale credit.* In any transaction subject to this section, the following items, as applicable, shall be disclosed:
>
> * * *
>
> (3) The number, amount, and due dates of periods of payments scheduled to repay the indebtedness and, except in the case of a loan secured by a first lien or equivalent security interest on a dwelling made to finance the purchase of that dwelling and except in the case of a sale of a dwelling, the sum of such payment using the term, "total of payments." [footnote] If any payment is more than twice the amount of an otherwise regularly scheduled equal payment, the creditor shall identify the amount of such payment by the term "balloon payment" and shall state the conditions, if any, under which that payment may be refinanced if not paid when due."

■ The utilization of a 30-year amortization period in the truth-in-lending statements furnished to defendants was not, as such, a violation of Federal regulation Z, since the truth-in-lending regulations

do not apply to credit transactions for business or commercial purposes. (15 U.S.C. sec. 1603(1) (1976).) (*First National Bank v. Skidis* (1980), 82 Ill. App. 3d 602, 403 N.E.2d 56.) Defendants argue that Citizens Savings' successors should nevertheless be bound by the terms of these statements, since the lender, once having undertaken to furnish defendants with forms designed by the Federal government to insure that borrowers would be adequately informed of the conditions of their loans, should properly have expected defendants to rely on the information furnished by the statements. These statements plainly refer to "360 monthly installments of $902.00," and make no reference to the "balloon payment" implicit in a five-year call provision. Since, as we have noted, Federal regulation Z is inapplicable to the instant transaction, the allegedly misleading truth-in-lending statements, together with the additional allegedly misleading statements and omissions in the loan passbooks and loan settlement statements, are properly elements to be considered in defendants' final contention that foreclosure should be precluded on a theory of equitable estoppel.

Equitable estoppel is a doctrine invoked to prevent fraud and injustice (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 449, 220 N.E.2d 415). Employment of the doctrine requires the following elements: (1) the party against whom estoppel is asserted must, by word or conduct, have misrepresented material facts; (2) the party against whom estoppel is asserted must have known that the misrepresentations were untrue; (3) the party claiming benefit of estoppel must not have known that the misrepresentations were untrue; (4) the party against whom estoppel is asserted must have intended or expected that his or her misrepresentations would be acted upon by the party claiming benefit of estoppel; (5) the party claiming benefit of estoppel must have relied or acted upon the misrepresentations; and (6) the party claiming benefit of estoppel must be in a position of prejudice if the party against whom estoppel is asserted is permitted to deny the truth of the representations made. *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 109-10, 365 N.E.2d 1019.

The essential question, in light of these criteria, is whether the conduct of the lender was such as to constitute the requisite element of knowing misrepresentation, and whether defendants, relying on the misrepresentation, acted to their detriment in executing the note.

■ The record is capable of supporting two theories of misrepresentation. The first theory presupposes that the five-year call provision existed on the face of the note at the time defendants signed the instrument. In this situation, defendants, having failed to thoroughly examine the terms of the note, would have been induced to agree to

terms other than those represented either by the lender's conduct or the apparent provisions of other documents furnished to defendants pursuant to the note. Such inducement on the part of the lender is insufficient to constitute the misrepresentation requisite to estoppel. In *Belleville National Bank v. Rose* (1983), 119 Ill. App. 3d 56, 456 N.E.2d 281, we discussed the rule, well established in the courts of Illinois, that a defense of fraud is ordinarily unavailable to avoid the effect of a written agreement where the complaining party could have discovered the fraud by reading the instrument, and was in fact afforded a full opportunity to do so. Absent circumstances indicating a manifest inequality between the respective parties, one who is aware of the nature and character of the instrument one is signing cannot subsequently avoid the terms of the instrument by claiming that he or she was deceived by representations outside the instrument itself. (119 Ill. App. 3d 56, 61.) The record before us contains no evidence of such inequality in the positions of the respective parties. Furthermore, the label assigned to the conduct of the alleged wrongdoer is not in itself dispositive of the claim. (119 Ill. App. 3d 56, 59.) Thus, whether the allegation of deceptive conduct is presented pursuant to a theory of "fraud in the inducement," as in *Belleville*, or asserted as a requisite element of "equitable estoppel," as in the instant case, the allegation is in either situation ineffective provided that the disputed provision was present on the face of the note at its execution and the allegedly deceived party was afforded a full opportunity to read the instrument.

The second possible theory of misrepresentation is that the note was actually altered to include the five-year call provision after defendants placed their signatures on the instrument. In this situation, the misrepresentation would be sufficient to establish the requisite element of estoppel; however, the record does not demonstrate that defendants adequately met their burden of proof regarding such an alteration. Where it is admitted that the signature to an instrument is genuine, and there is nothing on the face of the instrument to create a suspicion that it was altered after its execution, the party seeking to avoid the instrument must prove such an alteration. (*Osborn v. Rearick* (1927), 325 Ill. 529, 534, 156 N.E. 802.) The only evidence of alteration offered at trial was defendant John Conrath's aforementioned reference to the "experiment" conducted with regard to the manner in which the typed lines of the note lineally corresponded to the typed five-year call provision. Insofar as this experiment may be said to prove anything, it is that the five-year call provision was typed at a different time than the other typed provisions of

the note. The experiment in no way proves that the five-year call provision was added to the note after defendants had signed it. The unsupported speculation of an interested party cannot alone establish the requisite proof of alteration, particularly where the party admits that he did not thoroughly read the instrument at the time he signed it. *Cf. Miller v. Swanson* (1965), 66 Ill. App. 2d 179, 213 N.E.2d 294.

■ Plaintiff cross-appeals from the trial court's order of May 9, 1983, setting aside the judicial sale of April 26, 1983. The court reasoned that defendants reasonably relied upon a statement of the court, made in the course of a hearing on April 19, 1983, pursuant to defendants' post-trial motion to set aside the judgment of foreclosure, that the sale scheduled for April 26, 1983, would be stayed, allowing defendants 30 days in which to post bond and file a notice of appeal. "While [defendants'] impression and that of their attorney was incorrect," the trial court reasoned in its order setting aside the sale, "it was not unreasonable, and it has not been shown that [defendants] or their attorney acted in bad faith, nor is there any showing of prejudice to [plaintiff] if the sale were to be set aside." A court may properly exercise its equitable powers and allow redemption of a foreclosure after the statutory time period has expired where the redemption may have been precluded due to fraud or mistake. (*Mutual Life Insurance Co. v. Chambers* (1980), 88 Ill. App. 3d 952, 957, 410 N.E.2d 962.) It is only reasonable that such an equitable extension should be allowed where the mistake, however inadvertently, is induced by the court itself. Our review of the record in the instant case, specifically the court's statement made at the hearing conducted on April 19, 1983, supports the logic and equity of the trial court's order. We thus conclude that the order setting aside the sale of April 26, 1983, was properly entered.

■ Plaintiff further prays by cross-appeal that this court should remand the present action to the trial court for a determination of attorney fees and additional costs to plaintiff incurred by this appeal. The note and mortgages which are the subject of this appeal provided for the assessment of such fees and costs, and such an assessment was made at the time of trial. While it is not within the appellate court's authority to assess a party's entitlement to attorney fees and costs incurred on appeal, it is appropriate to remand the cause to the trial court for such a determination. (*Haring v. Godbersen* (1957), 13 Ill. App. 2d 95, 141 N.E.2d 90.) Because assessment of fees is explicitly provided for in the instrument which is the subject of this litigation, we believe that remand for such an assessment is appropriate.

For the foregoing reasons, the judgment of foreclosure is af-

firmed; the order setting aside the judicial sale of April 26, 1983, is affirmed; the cause is remanded for consideration of plaintiff's claim regarding attorney fees and costs incurred on appeal; and for further proceedings with regard to an appropriate judicial sale.

Judgment affirmed; order affirmed; cause remanded for further proceedings consistent with this order.

WELCH, P.J., and JONES, J., concur.