In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2057

Cozzi Iron & Metal, Inc., now
known as Metal Management
Midwest, Inc.,

Counterclaim Plaintiff-Appellant,

v.

U.S. Office Equipment, Inc.,
now known as U.S. Office
Solutions, Inc.,

Counterclaim Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 3343--Elaine E. Bucklo, Judge.

Argued December 4, 2000--Decided May 15, 2001


   Before Flaum, Chief Judge, Diane P. Wood
and Williams, Circuit Judges.

   Williams, Circuit Judge.  Cozzi Iron &
Metal, Inc. ("Cozzi") filed this
counterclaim against GreatAmerica Leasing
Corp. ("GreatAmerica") and U.S. Office
Equipment, Inc. ("U.S. Office") alleging
that their failure to modify the terms of
ten written leases constituted common law
fraud and a violation of the Illinois
Consumer Fraud and Deceptive Business
Practices Act ("Illinois Consumer Fraud
Act")./1 The district court, sitting in
diversity jurisdiction, dismissed the
counterclaim for failure to state a
claim. We affirm the dismissal of the
common law fraud cause of action, but
reverse and remand the consumer fraud
claim.

I

   This appeal arises out of a dispute
between two parties to a photocopier
leasing agreement. On nine different
occasions, Cozzi leased fourteen
photocopiers from U.S. Office for use at
seven different Cozzi locations.  Between
February and December 1998, the parties
entered into a total of ten leases; each
of the leases being two pages in length

and containing identical terms. Under the terms of the leases, Cozzi agreed to pay 2.17 cents per copy up to a stated number of copies, plus an additional 1.1 cents per copy for any amount over the stated quantity. According to Cozzi, because it had never leased photocopiers on a per copy basis, it was unfamiliar with how many copies it made on a monthly basis. Thus, U.S. Office selected the minimum number of copies for each lease.

Each lease specifically required Cozzi to pay a minimum monthly fee that was derived from multiplying the cost per copy by the minimum number of copies assigned to each lease. Paragraphs 5 and 7, respectively, provided in pertinent part:

YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL MINIMUM MONTHLY RENTAL PAYMENTS . . . NO MATTER WHAT HAPPENS . . . .

Your obligation to pay Minimum Monthly Rental Payments . . . is unconditional and is not subject to any reduction, set-off, defense, or counterclaim for any reason whatsoever. . . . You will never pay less than the Minimum Monthly Rental Payment.

The result was that Cozzi agreed to pay for a minimum of 321,575 copies per month, for 60 months, at a minimum cost of $6,978.17 per month.

The leases also provided that Cozzi had not relied on any representations other than those stated in the agreement:

NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS AGREEMENT. . . . YOU HAVE NOT RELIED ON ANY STATEMENTS OWNER OR OWNER'S EMPLOYEES HAVE MADE.

Nevertheless, Cozzi alleges that contemporaneously with the signing of each lease, a U.S. Office representative informed a Cozzi representative that even though the leases required payment for the minimum number of copies assigned to each lease, Cozzi would only be responsible for the copies it actually made. Cozzi further claims that actual copy usage was to be determined at a later time by U.S. Office based on actual readings taken from the machines.

All was well until January 1999, when Cozzi determined, through documents provided by U.S. Office, that Cozzi's actual copy usage was approximately 40,000 copies per month. Allegedly, after some bantering back and forth, in March 1999, U.S. Office reduced Cozzi's minimum copies from 321,575 to 70,000 per month, and increased the minimum cost per copy from 2.17 cents to 7.5 cents. Cozzi refused to accept the adjustment and sent notice that it would only pay for the actual number of copies it made at the rate of 2.17 cents per copy.

GreatAmerica, which had been assigned the leases by U.S. Office, sued Cozzi for $372,053.14 for defaulting under the leases. In response, Cozzi filed this counterclaim against both GreatAmerica and U.S. Office alleging that U.S. Office's inclusion of provisions in the leases different than its oral representations constituted common law fraud and a violation of the Illinois Consumer Fraud Act. Specifically, Cozzi claimed, among other things, that U.S. Office never informed Cozzi that: 1) there would be a minimum monthly payment regardless of the number of copies and even if no copies were made, 2) there would not be an adjustment to the contract to reflect Cozzi's actual usage, and 3) the contract was subject to fine print terms and conditions on the reverse side.

This appeal centers around the district court's dismissal of Cozzi's counterclaim against U.S. Office./2 On appeal, Cozzi argues that the district court erred when it: 1) dismissed its common law fraud claim on the grounds that Cozzi's reliance on the alleged representation was not justified as a matter of law, and 2) found that Cozzi could not state a claim for consumer fraud because it could not prove that it reasonably relied on the representations.

II

We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) de novo, accepting all well-pleaded allegations in the counterclaim as true and drawing all reasonable inferences in favor of the counterclaim plaintiff. See Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th

Cir. 1998).

A

In order to state a claim for common law fraud in the formation of a contract, Cozzi needs to allege that: 1) U.S. Office made a false statement of material fact, 2) U.S. Office knew that the statement was false, 3) U.S. Office made the statement intending to induce Cozzi to act, 4) Cozzi relied upon the truth of the statement, and 5) Cozzi's damages resulted from reliance on the statement. Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 591 (Ill. 1996). In addition, Cozzi's reliance upon the misrepresentation must have been justified. See Charles Hester Enters., Inc. v. Illinois Founders Ins. Co., 499 N.E.2d 1319,1323 (Ill. 1986). That is, Cozzi must have had a right to rely upon the statement. See id.

In determining whether Cozzi's reliance was justified, we must consider all of the facts that Cozzi knew, as well as those facts Cozzi could have learned through the exercise of ordinary prudence. See Adler v. William Blair & Co., 648 N.E.2d 226, 232 (Ill. App. Ct. 1995). Although reliance is normally a question of fact, it can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn. Neptuno Treuhand-und Verwaltungsgesellschaft MBH v. Arbor, 692 N.E.2d 812, 819 (Ill. App. Ct. 1998).

It is an elementary principle of contract law that "'[a party] may not enter into a transaction with [its] eyes closed to available information and then charge that [it] has been deceived by another.'" Adler, 648 N.E.2d at 232 (quoting Central States Joint Bd. v. Continental Assurance Co., 453 N.E.2d 932, 936 (Ill. App. Ct. 1983)). As long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent inducement to invalidate contracts. See Belleville Nat'l Bank v. Rose, 456 N.E.2d 281, 283-84 (Ill. App. Ct. 1983); Hurley v. Frontier Ford Motors, Inc., 299 N.E.2d 387, 392 (Ill. App. Ct. 1973).

Cozzi argues, relying on Ginsburg v. Bartlett, 262 Ill. App. 14 (Ill. App. Ct. 1931), that this is not the normal failure to read the contract situation because it could have read the contract "once or 200 times" and would not have found that the alleged representation was a lie. Cozzi contends that it could only realize that U.S. Office's promises were misrepresentations when it came time for U.S. Office to make the adjustment to the number of copies for which Cozzi would be responsible. At that time, Cozzi asserts, U.S. Office failed to decrease the minimum number of copies to reflect Cozzi's actual copy usage and increased the price per copy, thereby making the overall adjustment only nominally cheaper for Cozzi.

Cozzi's argument is misguided. Cozzi had the lease in front of it nine different times. Each lease contained identical provisions and was only two pages long. Each time Cozzi signed a lease, it had the opportunity to read the terms of the lease that were explicitly different from the alleged oral representations. In two paragraphs, the lease agreement stated that Cozzi was responsible for the minimum number of copies identified in the lease. Nowhere did the lease provide that Cozzi would only be responsible for the actual copies that it made. And, each lease specifically provided that Cozzi had not relied on any oral representations contrary to the written terms of the agreement. Cozzi is a sophisticated business that has experience in entering into contracts. It could have shopped around and found a better deal, or at the very least, negotiated with U.S. Office to include written terms that protected its own interests.

Additionally, Ginsburg is of no help to Cozzi. There, the plaintiff purchased land from the defendant under a written contract that provided that she "agrees that the vendor has not represented or promised that there will be a new line of transportation [established nearby] and . . . that a new line of transportation is not a part of the consideration of this contract." Ginsburg, 262 Ill. App. at 21-22. The contract further stated that "no representation, promise or agreement not expressed in the contract has been made

to induce [her] to enter it." Id. Despite these statements in the contract, the Illinois appellate court affirmed the trial court's finding that the plaintiff could introduce evidence that at the time of entering into the contract the seller falsely represented that a new railroad facility would actually be established. The court's decision was based on its finding that the fraudulent representation did not concern a substantive part of the contract, i.e., the purchase of the land. Id. at 35.

Here, the alleged representations affect a substantive part of the contract, namely, the amount of money that Cozzi would be required to pay U.S. Office each month for the photocopiers it leased. Accordingly, we agree with the district court that as a matter of law, Cozzi's reliance was not justified. Therefore, the dismissal of Cozzi's common law fraud counterclaim is affirmed.
B

Cozzi fares better on its consumer fraud claim. The Illinois Consumer Fraud Act prohibits the "misrepresentation or the concealment, suppression or omission of any material fact" in the conduct of trade or commerce. 815 Ill.Comp.Stat. sec.505/2 (West 2000). In order to state a claim for a violation of the Act, Cozzi must allege: 1) a deceptive act or practice by U.S. Office, 2) U.S. Office's intent that Cozzi rely on the deception, and 3) that the deception occurred in the course of conduct involving trade and commerce. See Connick, 675 N.E.2d at 593. Cozzi must also allege that the deceptive act proximately caused its injury. See id.

U.S. Office argues that Cozzi cannot establish that the alleged statements were material or that Cozzi's reliance was reasonable. A material fact is one in which "a buyer would have acted differently knowing the information, or . . . concern[s] the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." Id. at 595. In other words, the fact "must be essential to the transaction between the parties." L.R.J. Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52, 54 (7th Cir. 1995).

Cozzi pleaded that because it was

inexperienced in leasing photocopiers on a per copy basis, it relied on U.S. Office's representation that it would change the minimum number of copies in the leases to reflect Cozzi's actual usage. According to Cozzi, it would not have entered into the leases if it had known that U.S. Office would not make the change. Although U.S. Office correctly notes that in Ryan we held that the failure to include a specific provision in a stock purchase agreement demonstrated that the provision was immaterial, Ryan is distinguishable because Cozzi was not experienced in the subject matter of the agreement and was not represented by counsel. Most importantly, the provision in Ryan was collateral to the purchase of the company's stock. See id. Here, by contrast, the alleged misrepresentations go to the very heart of the contract--the amount that Cozzi was required to pay U.S. Office for use of the photocopiers.

As for whether Cozzi's reliance was reasonable, we need not spill additional ink on how imprudent it was for Cozzi to enter into a contract with terms explicitly different than what it thought it to be. This is so because the Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim. See Connick, 675 N.E.2d at 593 (no reliance); Martin v. Heinold Commodities, Inc., 643 N.E.2d 734, 754 (Ill. 1994) (no actual reliance); Siegel v. Levy Org. Dev. Co., Inc., 607 N.E.2d 194, 198 (Ill. 1992) (no actual reliance). Despite the Illinois Supreme Court's clear holdings, U.S. Office asks us to find, as did the district court and a multitude of Illinois appellate courts, see Elipas Enters., Inc. v. Silverstein, 612 N.E.2d 9, 12 (Ill. App. Ct. 1993); Stehl v. Brown's Sporting Goods, Inc., 603 N.E.2d 48, 51 (Ill. App. Ct. 1992); Lidecker v. Kendall College, 550 N.E.2d 1121, 1124 (Ill. App. Ct. 1990), that reasonable or justifiable reliance is required.

As a federal court reviewing a state statute, we must follow the state's highest court's interpretation of its own state law. Heidelberg v. Illinois Prisoner Review Bd., 163 F.3d 1025, 1027 (7th Cir. 1998). Based on this principle, we must hold that a complaining party is

not required to establish reliance, either actual or reasonable, to state a claim under the Illinois Consumer Fraud Act. This is in line not only with the Illinois Supreme Court's statements regarding the absence of a reliance requirement, but also the liberal policy behind the Act. See Connick, 675 N.E.2d at 594. Accordingly, the district court erred when it disposed of Cozzi's consumer fraud claim on the basis that Cozzi could not establish that its reliance was reasonable.

A review of the counterclaim demonstrates that Cozzi has plead all that is required of the Illinois Consumer Fraud Act. By holding as we do, we are not expressing a belief that Cozzi will be successful in proving that it was U.S. Office's misrepresentations and not Cozzi's own imprudence that proximately caused Cozzi's damages. We simply find that Cozzi has satisfied its pleading obligations.

III

For the foregoing reasons, we AFFIRM the district court's dismissal with prejudice of Cozzi's common law fraud claim, but REVERSE and REMAND for further proceedings on its consumer fraud claim.

FOOTNOTES

/1 Cozzi also sought recovery under various breach of contract theories, none of which is the subject of this appeal.

/2 The claims between GreatAmerica and Cozzi have been settled and dismissed with prejudice.


DIANE P. WOOD, Circuit Judge, concurring in the judgment. While I agree that the proper disposition of Cozzi Iron & Metal's counterclaims against Great America Leasing Corporation and U.S. Office Equipment is to dismiss the common law fraud claim and to remand the statutory consumer fraud claim, I am concerned that the rationale the majority has employed does not draw as sharp a line as it should among several different Illinois doctrines. I therefore concur in the judgment.

First, with respect to the common law fraud claim, the majority correctly notes that Illinois requires a plaintiff to prove five elements: (1) defendant made a false statement of material

fact, (2) defendant knew that the statement was false, (3) defendant made the statement intending to induce the plaintiff to act, (4) plaintiff relied on the truth of the statement, and (5) plaintiff's damages resulted from that reliance. See Connick v. Suzuki Motor Co., 675 N.E.2d 584, 591 (Ill. 1996). The majority concludes that even if Cozzi, our plaintiff for these purposes, literally relied on the truth of U.S. Office's copy volume estimates, this cannot constitute reliance as a matter of law because the contract warned that no representations had been made. If we were writing on a clean slate, this position makes perfect sense. But we are not. The Illinois Appellate Court, in Ginsburg v. Bartlett, 262 Ill. App. 14 (1st Dist. 1931), faced a remarkably similar situation. There, a seller had represented to the plaintiff at the time she entered into a contract for the sale of land that a new railroad facility would be established nearby. The contract, however, expressly stated that the buyer "agree[d] that the vendor has not represented or promised that there will be a new line of transportation . . . and that a new line of transportation is not part of the consideration of this contract." 262 Ill. App. at 21. The majority has attempted to distinguish Ginsburg on the ground that the fraudulent misrepresentation there did not involve a substantive part of the contract, but I find that unpersuasive.

I cannot see a difference between inducing someone to enter a contract for a copier based on representations about copy volume and inducing someone to enter a contract for the purchase of land based on representations about the land's proximity to a railroad. Both are statements designed to make the purchaser think that he or she is getting a great bargain--cheap copies, or land that is more desirable because it has access to cheap transportation. Neither is inherently more substantive than the other.

On the other hand, the central issue before the Ginsburg court was not whether the reliance element of a fraud claim could not be proven as a matter of law. It was instead whether the evidence of the pre-contractual representations had to be excluded from the proceeding because of Illinois's parol evidence rule. The court found that the parol evidence rule did not require exclusion of the evidence, because "parol evidence of fraudulent representations, not concerning a substantive part of the contract but made to induce a party to enter into the same, is admissible in evidence and has no tendency to vary the terms of provisions of the written contract." Id. at 35 (emphasis in original). As Cozzi's case comes to us, no one is arguing about parol evidence. The issue is reliance, and the

district court followed the numerous cases in which this court and others have said that a party cannot reasonably rely on statements flatly contradicted by the express terms of a contract. Nonetheless, the holding in Ginsburg is, as Cozzi points out, inconsistent with that line of cases, as the following passage illustrates:

It is also contended that the false representations, if made, cannot be relied upon by plaintiff . . . because of the clause in all contracts (that plaintiff agrees that the vendor has not represented or promised that there will be a new line of transportation to the properties) . . . . Under the evidence and the law we do not think there is any merit in that contention or argument. We believe it to be well settled law that a party guilty of fraud cannot, by way of estoppel against the party injured, rely upon provisions in a contract similar to those contained in the present contracts.

262 Ill. App. at 33-34. In essence, the court found that the fraud was complete by the time the pre-contractual false representations were made, and thus that the contractual provisions claiming the contrary could not shield the seller from a fraud lawsuit.

Even if this is what Ginsburg held, however, our analysis of the present case is not complete. Ginsburg is, after all, a seventy-year-old decision from the intermediate state appellate court. It is our duty under Erie Railroad v. Tompkins, 304 U.S. 64 (1938), to decide whether Ginsburg represents the current view of the Illinois Supreme Court. Even though that court has never expressly disapproved of the outcome in Ginsburg, there is ample reason to predict that the Illinois Supreme Court would today require justifiable reliance, and would find that a plaintiff did not justifiably rely if the written contract it signed clearly warned--before plaintiff signed it--that no promises were being made. So, for example, in Marino v. United Bank of Illinois, N.A., 484 N.E.2d 935 (Ill. 1985), the Illinois Supreme Court held that a mere allegation of reliance is insufficient to sustain a claim for common law fraud; the reliance must be justified. Whether reliance is justified depends on "all of the facts within a plaintiff's actual knowledge as well as those which he could have discovered by the exercise of ordinary prudence." Neptune Treuhand v. Arbor, 692 N.E.2d 812, 818 (Ill. App. Ct. 1998). Some years before Marino, the Illinois Appellate Court also held that there was no fraud as a matter of law in a case where the plaintiff had relied on oral representations that were inconsistent with the terms of a loan agreement that the plaintiff had ample opportunity to read

before signing. See Belleville National Bank v. Rose, 456 N.E.2d 281 (Ill. App. Ct. 1983).

In short, rather than drawing a line that is at best difficult and at worst illusory between "substantive" misrepresentations and non-substantive ones, I would squarely confront Ginsburg and hold that my best guess as a federal judge is that it no longer represents the law of Illinois. With Ginsburg out of the way, we are then free to apply the law of reliance as it now exists in the state and to conclude that Cozzi's common law claim against Great America was properly dismissed.

Turning to the discussion of Cozzi's claim under the Illinois Consumer Fraud and Deceptive Practices Act (CFA), 815 ILCS 505/1 et seq., I again cannot subscribe to the rationale the majority has adopted. Once again, we begin on common ground with the elements of a claim under the CFA: (1) a deceptive act or practice by the defendant (U.S. Office), (2) the defendant's intent that the plaintiff (Cozzi) rely on that deception, (3) the deception occurred in trade or commerce, and (4) proximate causation. Here, the troublesome parts of the case concern materiality and reliance. The majority looks to the Illinois Supreme Court's decision in Connick, supra, for the authoritative word on the meaning of materiality. There, the court defined a material fact as one in which "a buyer would have acted differently knowing the information, or . . . [one that] concern[s] the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." 675 N.E.2d at 595. This is the kind of language courts use when they are describing an objective inquiry. So far, so good, but then the majority turns to this court's opinion in L.R.J. Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52 (7th Cir. 1995). Decided prior to Connick, Ryan treated materiality under Illinois law as a subjective inquiry. It held that a sophisticated business person who signed a stock agreement containing terms inconsistent with oral representations made prior to signing the agreement must not have considered the representations material and thus he could not state a claim under the CFA. Id. at 54.

Rather than recognize that the later Connick decision undermines the interpretation of Illinois law we used in Ryan (to the extent that Ryan relies on a subjective inquiry), the majority accepts Ryan's subjective inquiry and attempts to distinguish Ryan on its facts. Given that we are debating matters of Illinois law, any earlier decision of this court has no binding force in any event on the Illinois Supreme Court, and thus we are under no imperative to reconcile Ryan and

Connick. Furthermore, to the extent that recon- ciliation may be desirable, the majority's dis- tinctions are unpersuasive. Cozzi, it says, had no experience with the substance of this contract and was not represented by counsel. Ante at 8. This statement flatly contradicts the earlier observation in the section of the majority's opinion discussing common law fraud that "Cozzi is a sophisticated business that has experience in entering into contracts." Ante at 6. More importantly, after Connick there can be little doubt that, unlike reliance, materiality is assessed in Illinois under an objective test. Objectively, it is clear that a trier of fact could find that whether a buyer would be held responsible for a fixed number of copies per month no matter how many it generated is the type of information upon which a reasonable person would be expected to rely. As far as materiality is concerned, therefore, Cozzi is on solid ground.

With respect to reliance, Cozzi is helped by the fact that the CFA has modified the common law requirement that reliance must be demonstrated and that it must be shown to be reasonable or justifiable. The Illinois Supreme Court said in Connick that "[p]laintiff's reliance is not an element of statutory consumer fraud [under the CFA]." 675 N.E.2d at 593. The district court's holding to the contrary relied on Illinois appel- late decisions that had concluded that a private plaintiff seeking damages under the CFA must demonstrate "reasonable or justifiable reliance" even if "actual reliance" was not required. Whatever the status of those decisions before Connick, I cannot imagine that the Illinois Supreme Court would find that they survived it. Connick itself was a private party action, and thus no distinction based on the posture of the case is possible. Last, Connick cites with ap- proval the earlier decision in Harkala v. Wild- wood Realty, Inc., 558 N.E.2d 195 (Ill. App. Ct. 1990), where the court said: "The [CFA] is in- tended to provide broader consumer protection than the common law action of fraud; therefore, a plaintiff need not show actual reliance or diligence in ascertaining the accuracy of the misstatements." Id. at 199 (internal citations omitted).

Particularly given the distinction Illinois has drawn between reliance in common law cases and reliance in statutory cases, it is important for us to keep these doctrinal lines straight. On the other hand, we should not be introducing an element of subjectivity into the materiality question that does not now exist in Illinois law, whatever the case may once have been. I have no doubt that this court has come to the correct

result in this case, but I must respectfully
concur in the judgment.