Williams, Circuit Judge.
Cozzi Iron & Metal, Inc. (“Cozzi”) filed this counterclaim against GreatAmerica Leasing Corp. (“GreatAmerica”) and U.S. Office Equipment, Inc. (“U.S.Office”) alleging that their failure to modify the terms of ten written leases constituted common law fraud and a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (“Illinois Consumer Fraud Act”).[1] The district court, sitting in diversity jurisdiction, dismissed the coun *573 terclaim for failure to state a claim. We affirm the dismissal of the common law fraud cause of action, but reverse and remand the consumer fraud claim.
I
This appeal arises out of a dispute between two parties to a photocopier leasing agreement. On nine different occasions, Cozzi leased fourteen photocopiers from U.S. Office for use at seven different Cozzi locations. Between February and December 1998, the parties entered into a total of ten leases; each of the leases being two pages in length and containing identical terms. Under the terms of the leases, Cozzi agreed to pay 2.17 cents per copy up to a stated number of copies, plus an additional 1.1 cents per copy for any amount over the stated quantity. According to Cozzi, because it had never leased photocopiers on a per copy basis, it was unfamiliar with how many copies it made on a monthly basis. Thus, U.S. Office selected the minimum number of copies for each lease.
Each lease specifically required Cozzi to pay a minimum monthly fee that was derived from multiplying the cost per copy by the minimum number of copies assigned to each lease. Paragraphs 5 and 7, respectively, provided in pertinent part:
YOU AGREE THAT YOU ARE UNCONDITIONALLY OBLIGATED TO PAY ALL MINIMUM MONTHLY RENTAL PAYMENTS ... NO MATTER WHAT HAPPENS....
Your obligation to pay Minimum Monthly Rental Payments ... is unconditional and is not subject to any reduction, set-off, defense, or counterclaim for any reason whatsoever.... You will never pay less than the Minimum Monthly Rental Payment.
The result was that Cozzi agreed to pay for a minimum of 321,575 copies per month, for 60 months, &t a minimum cost of $6,978.17 per month.
The leases also provided that Cozzi had not relied on any representations other than those stated in the agreement:
NO INDIVIDUAL IS AUTHORIZED TO CHANGE ANY PROVISION OF THIS AGREEMENT.... YOU HAVE NOT RELIED ON ANY STATEMENTS OWNER OR OWNER’S EMPLOYEES HAVE MADE.
Nevertheless, Cozzi alleges that contemporaneously with the signing of each lease, a U.S. Office representative informed a Coz-zi representative that even though the leases required payment for the minimum number of copies assigned to each lease, Cozzi would only be responsible for the copies it actually made. Cozzi further claims that actual copy usage was to be determined at a later time by U.S. Office based on actual readings taken from the machines.
All was well until January 1999, when Cozzi determined, through documents provided by U.S. Office, that Cozzi’s actual copy usage was approximately 40,000 copies per month. Allegedly, after some bantering back and forth, in March 1999, U.S. Office reduced Cozzi’s minimum copies from 321,575 to 70,000 per month, and increased the minimum cost per copy from 2.17 cents to 7.5 cents. Cozzi refused to accept the adjustment and sent notice that it would only pay for the actual number of copies it made at the rate of 2.17 cents per copy.
GreatAmerica, which had been assigned the leases by U.S. Office, sued Cozzi for $372,053.14 for defaulting under the leases. In response, Cozzi filed this counterclaim against both GreatAmerica and U.S. Office alleging that U.S. Office’s inclusion of provisions in the leases different than its oral representations constituted common law *574 fraud and a violation of the Illinois Consumer Fraud Act. Specifically, Cozzi claimed, among other things, that U.S. Office never informed Cozzi that: 1) there would be a minimum monthly payment regardless of the number of copies and even if no copies were made, 2) there would not be an adjustment to the contract to reflect Cozzi’s actual usage, and 3) the contract was subject to fine print terms and conditions on the reverse side.
This appeal centers around the district court’s dismissal of Cozzi’s counterclaim against U.S. Office.[2] On appeal, Cozzi argues that the district court erred when it: 1) dismissed its common law fraud claim on the grounds that Cozzi’s reliance on the alleged representation was not justified as a matter of law, and 2) found that Cozzi could not state a claim for consumer fraud because it could not prove that it reasonably relied on the representations.
II
We review a district court’s decision to grant a motion to dismiss under Rule 12(b)(6) de novo, accepting all well-pleaded allegations in the counterclaim as true and drawing all reasonable inferences in favor of the counterclaim plaintiff. See Gastineau v. Fleet Mortgage Corp., 137 F.3d 490, 493 (7th Cir.1998).
A
In order to state a claim for common law fraud in the formation of a contract, Cozzi needs to allege that: 1) U.S. Office made a false statement of material fact, 2) U.S. Office knew that the statement was false, 3) U.S. Office made the statement intending to induce Cozzi to act, 4) Cozzi relied upon the truth of the statement, and 5) Cozzi’s damages resulted from reliance on the statement. Connick v. Suzuki Motor Co., Ltd., 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 591 (Ill.1996). In addition, Cozzi’s reliance upon the misrepresentation must have been justified. See Charles Hester Enters., Inc. v. Illinois Founders Ins. Co., 114 Ill.2d 278, 102 Ill.Dec. 306, 499 N.E.2d 1319, 1323 (Ill.1986). That is, Cozzi must have had a right to rely upon the statement. See id.
In determining whether Cozzi’s reliance was justified, we must consider all of the facts that Cozzi knew, as well as those facts Cozzi could have learned through the exercise of ordinary prudence. See Adler v. William Blair & Co., 271 Ill.App.3d 117, 207 Ill.Dec. 770, 648 N.E.2d 226, 232 (Ill.App.Ct.1995). Although reliance is normally a question of fact, it can be determined as a matter of law when no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn. Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 295 Ill.App.3d 567, 229 Ill.Dec. 823, 692 N.E.2d 812, 819 (Ill.App.Ct.1998).
It is an elementary principle of contract law that “ ‘[a party] may not enter into a transaction with [its] eyes closed to available information and then charge that [it] has been deceived by another.’ ” Adler, 207 IlLDec. 770, 648 N.E.2d at 232 (quoting Central States Joint Bd. v. Continental Assurance Co., 117 Ill.App.3d 600, 73 IlLDec. 107, 453 N.E.2d 932, 936 (Ill. App.Ct.1983)). As long as the complaining party could have discovered the fraud by reading the contract and had the opportunity to do so, Illinois courts have refused to extend the doctrine of fraudulent in *575 ducement to invalidate contracts. See Belleville Nat’l Bank v. Rose, 119 Ill.App.3d 56, 74 Ill.Dec. 779, 456 N.E.2d 281, 283-84 (Ill.App.Ct.1983); Hurley v. Frontier Ford Motors, Inc., 12 Ill.App.3d 905, 299 N.E.2d 387, 392 (Ill.App.Ct.1973).
Cozzi argues, relying on Ginsburg v. Bartlett, 262 Ill.App. 14 (Ill.App.Ct.1931), that this is not the normal failure to read the contract situation because it could have read the contract “once or 200 times” and would not have found that the alleged representation was a lie. Cozzi contends that it could only realize that U.S. Office’s promises were misrepresentations when it came time for U.S. Office to make the adjustment to the number of copies for which Cozzi would be responsible. At that time, Cozzi asserts, U.S. Office failed to decrease the minimum number of copies to reflect Cozzi’s actual copy usage and increased the price per copy, thereby making the overall adjustment only nominally cheaper for Cozzi.
Cozzi’s argument is misguided. Cozzi had the lease in front of it nine different times. Each lease contained identical provisions and was only two pages long. Each time Cozzi signed a lease, it had the opportunity to read the terms of the lease that were explicitly different from the alleged oral representations. In two paragraphs, the lease agreement stated that Cozzi was responsible for the minimum number of copies identified in the lease. Nowhere did the lease provide that Cozzi would only be responsible for the actual copies that it made. And, each lease specifically provided that Cozzi had not relied on any oral representations contrary to the written terms of the agreement. Cozzi is a sophisticated business that has experience in entering into contracts. It could have shopped around and found a better deal, or at the very least, negotiated with U.S. Office to include written terms that protected its own interests.
Additionally, Ginsburg is of no help to Cozzi. There, the plaintiff purchased land from the defendant under a written contract that provided that she “agrees that the vendor has not represented or promised that there will be a new line of transportation [established nearby] and ... that a new line of transportation is not a part of the consideration of this contract.” Ginsburg, 262 Ill.App. at 21-22. The contract further stated that “no representation, promise or agreement not expressed in the contract has been made to induce [her] to enter it.” Id. Despite these statements in the contract, the Illinois appellate court affirmed the trial court’s finding that the plaintiff could introduce evidence that at the time of entering into the contract the seller falsely represented that a new railroad facility would actually be established. The court’s decision was based on its finding that the fraudulent representation did not concern a substantive part of the contract, i.e., the purchase of the land. Id. at 35.
Here, the alleged representations affect a substantive part of the contract, namely, the amount of money that Cozzi would be required to pay U.S. Office each month for the photocopiers it leased. Accordingly, we agree with the district court that as a matter of law, Cozzi’s rebanee was not justified. Therefore, the dismissal of Coz-zi’s common law fraud counterclaim is affirmed.
B
Cozzi fares better on its consumer fraud claim. The Illinois Consumer Fraud Act prohibits the “misrepresentation or the concealment, suppression or omission of any material fact” in the conduct of trade or commerce. 815 Ill.Comp.Stat. § 505/2 (West 2000). In order to state a *576 claim for a violation of the Act, Cozzi must allege: 1) a deceptive act or practice by U.S. Office, 2) U.S. Office’s intent that Cozzi rely on the deception, and 3) that the deception occurred in the course of conduct involving trade and commerce. See Connick, 221 Ill.Dec. 389, 675 N.E.2d at 593. Cozzi must also allege that the deceptive act proximately caused its injury. See id.
U.S. Office argues that Cozzi cannot establish that the alleged statements were material or that Cozzi’s reliance was reasonable. A material fact is one in which “a buyer would have acted differently knowing the information, or ... con-cernís] the type of information upon which a buyer would be expected to rely in making a decision whether to purchase.” Id. at 595. In other words, the fact “must be essential to the transaction between the parties.” L.R.J. Ryan v. Wersi Elec. GmbH & Co., 59 F.3d 52, 54 (7th Cir.1995).
Cozzi pleaded that because it was inexperienced in leasing photocopiers on a per copy basis, it relied on U.S. Office’s representation that it would change the minimum number of copies in the leases to reflect Cozzi’s actual usage. According to Cozzi, it would not haye entered into the leases if it had known that U.S. Office would not make the change. Although U.S. Office correctly notes that in Ryan we held that the failure to include a specific provision in a stock purchase agreement demonstrated that the provision was immaterial, Ryan is distinguishable because Cozzi was not experienced in the subject matter of the agreement and was not represented by counsel. Most importantly, the provision in Ryan was collateral to the purchase of the company’s stock. See id. Here, by contrast, the alleged misrepresentations go to the very heart of the contract — the amount that Cozzi was required to pay U.S. Office for use of the photocopiers.
As for whether Cozzi’s reliance was reasonable, we need not spill additional ink on how imprudent it was for Cozzi to enter into a contract with terms explicitly different than what it thought it to be. This is so because the Illinois Supreme Court has repeatedly held that, unlike a claim for common law fraud, reliance is not required to establish a consumer fraud claim. See Connick, 221 Ill.Dec. 389, 675 N.E.2d at 593 (no reliance); Martin v. Heinold Commodities, Inc., 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 754 (Ill.1994) (no actual reliance); Siegel v. Levy Org. Dev. Co., Inc., 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (Ill.1992) (no actual reliance). Despite the Illinois Supreme Court’s clear holdings, U.S. Office asks us to find, as did the district court and a multitude of Illinois appellate courts, see Elipas Enters., Inc. v. Silverstein, 243 Ill.App.3d 230, 183 Ill.Dec. 752, 612 N.E.2d 9, 12 (Ill.App.Ct.1993); Stehl v. Brown’s Sporting Goods, Inc., 236 Ill.App.3d 976, 177 Ill.Dec. 267, 603 N.E.2d 48, 51 (Ill.App.Ct.1992); Lidecker v. Kendall College, 194 Ill.App.3d 309, 141 Ill.Dec. 75, 550 N.E.2d 1121, 1124 (Ill.App.Ct.1990), that reasonable or justifiable reliance is required.
As a federal court reviewing a state statute, we must follow the state’s highest court’s interpretation of its own state law. Heidelberg v. Illinois Prisoner Review Bd., 163 F.3d 1025, 1027 (7th Cir.1998). Based on this principle, we must hold that a complaining party is not required to establish reliance, either actual or reasonable, to state a claim under the Illinois Consumer Fraud Act. This is in line not only with the Illinois Supreme Court’s statements regarding the absence of a reliance requirement, but also the liberal policy behind the Act. See Connick, *577 221 Ill.Dec. 389, 675 N.E.2d at 594. Accordingly, the district court erred when it disposed of Cozzi’s consumer fraud claim on the basis that Cozzi could not establish that its reliance was reasonable.
A review of the counterclaim demonstrates that Cozzi has plead all that is required of the Illinois Consumer Fraud Act. By holding as we do, we are not expressing a belief that Cozzi will be successful in proving that it was U.S. Office’s misrepresentations and not Cozzi’s own imprudence that proximately caused Coz-zi’s damages. We simply find that Cozzi has satisfied its pleading obligations.
Ill
For the foregoing reasons, we Affirm the district court’s dismissal with prejudice of Cozzi’s common law fraud claim, but Reverse and Remand for further proceedings on its consumer fraud claim.

. Cozzi also sought recovery under various breach of contract theories, none of which is the subject of this appeal.

. The claims between GreatAmerica and Coz-zi have been settled and dismissed with prejudice.